## The Travelers Companies v. Liberty Mutual Insurance Company, Gary Cole, d/b/a Cole Turf Company and Gary Cole, Individually

[670 A.2d 827]

No. 94-579

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed November 9, 1995

*John J. Boylan, III,* of *Boylan & Bowen,* Springfield, for Plaintiff-Appellant.

*Mark H. Kolter* of *Darby Laundon Stearns & Thorndike,* Stowe, for Defendant-Appellee.

**Allen, C.J.** Plaintiff workers' compensation insurer sought a declaratory judgment establishing its right to reimbursement for compensation benefits paid to defendant Gary Cole after he received underinsured motorist benefits from his employer's liability carrier. The Lamoille Superior Court granted Cole's motion for summary judgment. We reverse.

Gary Cole was seriously injured in a motor vehicle collision in Morrisville while in the course of his employment with the Cole Turf Company, his own sod farming business. The accident was caused solely by the negligence of an underinsured motorist. Because Cole's injuries arose out of and in the course of his employment, plaintiff, which provided workers' compensation insurance for Cole Turf Company, paid various workers' compensation benefits to and on behalf of Cole.

At the time of the accident, Cole was also covered by a personal automobile insurance policy he had purchased from Agway Insurance Company, which had $250,000 of underinsured motorist (UIM) coverage. Cole's business had an automobile policy issued by Liberty Mutual Insurance Company, which provided UIM coverage of $500,000. The tortfeasor's automobile insurance policy provided $100,000 of liability coverage. Stacking the two underinsured motorist policies provided total available UIM coverage of $750,000, leaving the amount of potential underinsurance liability in this case at $650,000.

Plaintiff consented to Cole's settlement with tortfeasor's carrier for its $100,000 policy limit and was reimbursed $50,000 for workers' compensation benefits paid pursuant to an agreement between plaintiff and Cole. In that agreement, plaintiff reserved the right to claim reimbursement for further compensation benefits paid out of any recovery Cole might obtain from his employer's UIM coverage.

Plaintiff's workers' compensation payments to Cole exceeded the initial $50,000 from the tortfeasor's policy by $126,500. Cole received $147,000 of UIM benefits from his personal UIM policy with Agway and $160,000 from his employer's policy with Liberty Mutual, resulting in total liability policy and UIM proceeds of $357,000. Plaintiff seeks reimbursement of $126,500 out of the $160,000 recovery from Liberty Mutual.

After plaintiff brought a declaratory judgment action seeking payment of this amount, the parties stipulated to the facts, agreed to an escrow of UIM proceeds, and filed cross-motions for summary judgment. The sole issue at trial and here on appeal is whether the

UIM proceeds received from the business's policy are available to reimburse plaintiff for the workers' compensation benefits it paid to Cole.

The statute at issue is 21 V.S.A. § 624, which states in relevant part:

> (a) Where the injury for which compensation is payable under the provisions of this chapter was caused under circumstances creating a legal liability to pay the resulting *damages* in *some person other than the employer*, the acceptance of compensation benefits or the commencement of proceedings to enforce compensation payments shall not act as an election of remedies, but the injured employee or the employee's personal representative may also proceed to enforce the liability *of such third party* for *damages* in accordance with the provisions of this section. . . .

> . . . .

> (e) In an action to enforce the liability of a third party, the injured employee may recover any amount which the employee or the employee's personal representative would be entitled to recover in a civil action. Any recovery against the *third party* for *damages* resulting from personal injuries or death only, after deducting expenses of recovery, shall first reimburse the employer or its workers' compensation insurance carrier for any amounts paid or payable under this chapter to date of recovery, and the balance shall forthwith be paid to the employee . . . and shall be treated as an advance payment by the employer on account of any future payment of compensation benefits.

(Emphasis added.)

Noting that this Court has not yet decided the question, the trial court ruled that UIM benefits from the employer's liability carrier are not subject to a lien in plaintiff's favor under § 624(e), principally because they are first-party, not third-party, obligations. The court noted that this was essentially the ruling in two earlier superior court cases raising substantially the same question and was, as Cole had argued, the decision in a majority of precedents from other jurisdictions that had considered the question. This appeal followed.

We reverse because, on its face, the Vermont statute requires a contrary result. First, it is important to state what this case is *not*

about. This case is not about the legislative policies underlying § 624. The statute establishes the right of a workers' compensation carrier to be reimbursed for payments to an insured employee who obtains personal damages for injury from a third party. The economic and social considerations underlying the legislative choice to favor the compensation carrier in this manner are concerns for the Legislature, not this Court. By requiring reimbursement of workers' compensation carriers, the statute thereby operates to lower the cost of workers' compensation insurance. Nevertheless, because policymaking is the province of the Legislature, our task is to construe the statute with the aid of the usual rules of construction.

Cole first argues that the employer's UIM carrier was not a "third party" within the meaning of § 624, relying both on the text of the statute and on cases from other jurisdictions which hold that the UM/UIM carrier does not fall within particular definitions of third parties. This is a common theme in the "majority rule" cases. Typical is *Rhodes v. Automotive Ignition Co.*, 275 A.2d 846 (Pa. Super. Ct. 1971), where the court held that the workers' compensation carrier should not have been reimbursed out of the deceased employee's UM policy award, because the UM carrier was not a third party. *Id.* at 848. The court relied, however, on a state statute providing as follows:

> "Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe[e], his personal representative, his estate or his dependents, *against such third party* to the extent of the compensation payable under this article by the employer . . . ."

*Id.* (quoting P.L. 736 § 319 (1915), as amended, 77 P.S. § 671 (1970) (current version at Pa. Stat. Ann. tit. 77, § 671 (1992))). Under this statute, the third party was the uninsured motorist who struck and killed plaintiff's decedent. This definition contrasts sharply with the concept of third person in § 624(a), which permits the employee and the workers' compensation carrier to recover where a legal liability to pay damages is created in "some person other than the employer." Later references to "third party" in § 624 relate back to the phrase "some person other than the employer," as there is nothing in the text or context of the section that would suggest a different definition.

In sum, it is clear that, within § 624, "third party" means a party who is not (1) the workers' compensation carrier, (2) the injured worker, or (3) the employer, notwithstanding that in many other

contexts an agreement between an insurer and an insured would be described as one between first and second parties, with the phrase "third party" referring to one who was a stranger to the contract. Thus, we hold that a workers' compensation insurer who has paid out benefits is entitled to reimbursement from UM/UIM payments made by an employer's liability carrier. This holding is consistent with *St. Paul Fire & Marine Insurance Co. v. Surdam*, 156 Vt. 585, 590, 595 A.2d 264, 266 (1991), where we held:

> When a third party is found responsible in a personal injury action for damages suffered by the worker, the worker is not permitted double recovery from both the insurer and third party for the same injury. Rather, the law evens out the consequences by permitting the carrier to recoup the benefits it paid the worker.

Cole also argues that the UIM payments were not "damages" within the meaning of § 624(a), (e). Again, this argument appears in the cases propounding the majority rule and other superior court precedents cited by the trial court. See, e.g, *Knight v. Insurance Co. of North America*, 647 F.2d 127, 129 (10th Cir. 1981); *March v. Pekin Ins. Co.*, 465 N.W.2d 852, 854 (Iowa 1991); *Wincek v. Town of West Springfield*, 506 N.E.2d 517, 519 (Mass. 1987).

In each of these cases, the notion that UIM payments cannot be damages arises from the proposition that UM/UIM policies are contracts and that the concept of damages is associated with torts. "Courts have pointed out that 'a payment made in performance of a contractual obligation is not a payment of damages.'" *Knight*, 647 F.2d at 129 (quoting *State Farm Mut. Ins. Co. v. Fireman's Fund American Ins. Co.*, 550 S.W.2d 554, 557 (Ky. 1977)). "[W]e think it clear that the Legislature used 'damages' to denote the money payable by a tortfeasor who is liable for injuries caused by his tortious act." *Wincek*, 506 N.E.2d at 519.

In none of these cases does a court report that any of the UM/UIM statutes involved defines UM or UIM payments as damages, though courts concede that damage amounts are integrally related to the determination of the proper amount of UM/UIM payments. See, e.g., *March*, 465 N.W.2d at 854 ("Although Pekin's obligation to March is *measured* by the damages wrought by the tortfeasor, Pekin's payment to March is not thereby transformed from a contractual payment to one for damages.").

■ Vermont's UM/UIM statute is unique among the statutes brought to our attention by the court or the parties' briefs. 23 V.S.A. § 941(f) states:

> For the purpose of this subchapter, a motor vehicle is underinsured to the extent that its personal injury limits of liability at the time of an accident are less than the limits of uninsured motorists coverage applicable to any injured party legally entitled to recover *damages* under said uninsured motorist coverage.

(Emphasis added.) Thus, the Vermont statutes equate uninsured motorist payments with damages. Because there is no difference in concept between uninsured and underinsured motorist recoveries, this characterization applies equally to the latter. The theoretical divide between contract and tort that underlies many of the majority-rule cases simply does not apply here. Our view is reinforced by the insuring agreement of the UIM policy, which obligates the UIM carrier to pay all sums the insured is entitled to recover as damages from the owner or insurer of the underinsured vehicle.

■ Cole next argues that a workers' compensation insurer can no more take privately purchased underinsured motorist benefits than it can take other private health, life, disability, or indemnity benefits payable to an injured worker. The simple response to Cole's argument is that UM/UIM coverage is unlike other privately purchased insurance, and allowing a workers' compensation insurer to treat a UM/UIM award as a recovery from the tortfeasor is a rational way to achieve the Legislature's policy goals. Although Cole's argument suggests a constitutional infirmity, no cases hold that a reimbursement scheme like Vermont's is constitutionally questionable.

An insurer may not sell and an insured may not purchase an automobile liability insurance policy in Vermont without UM/UIM insurance. 23 V.S.A. § 941(a). Unless the policyholder otherwise directs, UM/UIM coverage will equal liability coverage. An automobile liability policyholder who is also covered by workers' compensation insurance knows that if he or she is some day injured in a non-work-related accident, only the purchase of an appropriate amount of UM/UIM coverage will guarantee that a damage award against a tortfeasor will be fully realized. The policyholder is also presumed to know that, under Vermont law, if an accident is work-related and workers' compensation is paid, some portion of UM/UIM benefits will be assigned to the compensation carrier as reimburse-

ment for the workers' compensation payment. These potential outcomes become part of the risk/cost analysis that the policyholder uses to determine the personally optimum amount of UM/UIM coverage to purchase. Thus, the policyholder who purchases UM/UIM insurance cannot reasonably expect a windfall based on the happenstance of whether the tortfeasor is uninsured, underinsured, or adequately insured and whether the accident is work-related or not. Vermont law requires a policyholder to purchase a minimum of UM/UIM coverage, and allows a policyholder to purchase more coverage if he or she desires additional protection against loss, but the law also places the policyholder on notice that recovery will never exceed actual damages.

■ Nor can it be argued that a policyholder subject to the holding we announce today could be paying a premium for which the policyholder receives no benefit. If, for example, a policyholder is involved in an accident with a tortfeasor who is not adequately insured, partial recovery from the tortfeasor's insurer results in only partial UM/UIM payment. Similarly, if the policyholder receives payment from a compensation insurer and a portion of UM/UIM payments is assigned to the workers' compensation carrier as reimbursement for compensation payments already received, the policyholder receives only partial UM/UIM payment. In either case, the benefit that the policyholder receives from UM/UIM coverage is protection against the probability of deficient recovery from the tortfeasor, not guaranteed receipt of payment equal to the UM/UIM coverage.

■ Finally, Cole argues that 21 V.S.A. § 699 voids any agreement requiring an employee to pay "any portion of the cost of insurance of any kind maintained . . . by an employer for the purpose of securing compensation." This provision must be read in pari materia with 21 V.S.A. § 624. See *Robes v. Town of Hartford*, 161 Vt. 187, 192, 636 A.2d 342, 346 (1993) ("[T]his Court must read provisions that are part of the same statutory scheme in pari materia."). Given Cole's broad reading of "any portion of the cost of insurance," assignment to a workers' compensation carrier of any insurance proceeds the employee would have received, but for the assignment, could be said to violate § 699. Such a reading of § 699 is inconsistent with the language and intent of § 624. But if their provisions are interpreted harmoniously, § 624 presents a complete and logical apportionment of risks, costs, and benefits, under various accident scenarios, among the

employee injured in an accident, the workers' compensation carrier, and the employer's private liability insurer. Such interpretation comes as close as possible to the ideal we described in *LaBombard v. Peck Lumber Co.*, 141 Vt. 619, 624, 451 A.2d 1093, 1096 (1982):

> [T]he insurance carrier, representing the employer, comes out even, being without fault or injury; the third party wrongdoer pays exactly the damages he would have paid without any workers' compensation law; the attorney is reimbursed for services rendered, and the employee — in addition to what he has already received in compensation benefits — is entitled to the remainder.

In sum, our construction of § 624 does not conflict with § 699, the purpose of which is directed at other ills.

*Reversed.*