Progressive Casualty Insurance Co. v. Estate of Keenan (2006-130)

2007 VT 86

[Filed 31-Aug-2007]

 NOTICE: This opinion is subject to motions for reargument under V.R.A.P.
 40 as well as formal revision before publication in the Vermont Reports. 
 Readers are requested to notify the Reporter of Decisions, Vermont Supreme
 Court, 109 State Street, Montpelier, Vermont 05609-0801 of any errors in
 order that corrections may be made before this opinion goes to press.


 2007 VT 86

 No. 2006-130


 Progressive Casualty Insurance Company Supreme Court

 On Appeal from
 v. Bennington Superior Court


 Estate of Shaun P. Keenan, Daniel Keenan, October Term, 2006
 Shawn Macomber, Christopher Potter, 
 Carlos Dobbins, Ryan Monroe and 
 York Insurance Company of Maine, Inc.


 John P. Wesley, J.

 Stephen D. Ellis of Ellis & Boxer, Springfield, for Defendant-Appellant
 York Insurance Company.

 Donald W. Goodrich of Donovan & O'Connor, LLP, Bennington, for
 Defendants-Appellees Keenan.

 D. Patrick Winburn of Winburn Law Offices, Bennington, for
 Defendant-Appellee Monroe.

 PRESENT: Reiber, C.J., Dooley, Johnson and Skoglund, JJ., and Allen,
 C.J., (Ret.), Specially Assigned

 
 ¶ 1. REIBER, C.J. In this appeal, we revisit the meaning of the
 term "double recovery" as used in 21 V.S.A. § 624(e) and interpreted by the
 Court in Travelers Insurance Co. v. Henry, 2005 VT 68, 178 Vt. 287, 882
 A.2d 1133. Specifically, we address the circumstances under which an
 underinsured/uninsured motorist (UIM) award must be allocated between
 economic and noneconomic damages and, consequently, when a workers'
 compensation insurer has the right to reimbursement from the economic
 damages portion of such an award. As discussed below, we hold that,
 consistent with Henry, all first-party awards must be allocated between
 economic and noneconomic damages. To prevent a double recovery, the
 workers' compensation insurer has the right to reimbursement out of the
 economic damages portion of the award, and the employee retains the portion
 of the award that represents noneconomic damages. Because no such
 allocation occurred in this case, we reverse and remand for further
 proceedings. 

 ¶ 2. The relevant facts are undisputed. In June 2003, Ryan Monroe
 and five other employees of Four Seasons Roofing were seriously injured in
 an automobile accident caused by another driver. Because the accident
 occurred during the course of their employment, the employees received
 benefits from their employer's workers' compensation insurer, York
 Insurance Company of Maine, Inc. The employees also recovered $50,000 in
 damages from the insurance company of the individual who caused the
 accident. By agreement, one-third of this award was allocated to York as
 partial reimbursement for the workers' compensation benefits paid, and the
 remaining portion was divided equally among the six employees.

 ¶ 3. Four Seasons Roofing also held a UIM policy with Progressive
 Casualty Insurance Company under which the six employees were first-party
 insureds. Progressive paid the limits of its policy ($450,000) into the
 trial court, and it filed the instant interpleader action to determine the
 priority of claims against this fund. York and the six employees disagreed
 over the distribution of the fund. Following mediation, the employees
 agreed to an equal distribution ($75,000 each) among themselves, leaving
 York's claims for reimbursement unresolved. Eventually, York settled with
 each employee except Mr. Monroe.
 
 ¶ 4. In late 2005 and early 2006, the parties filed cross-motions
 for summary judgment regarding York's right to reimbursement. Each
 interpreted 21 V.S.A. § 624(e) and our decision in Henry differently. Mr.
 Monroe argued that he was entitled to first-dollar priority on the UIM
 proceeds until he was "made whole" for his noneconomic losses. Until this
 point was reached, he asserted, there could be no "double recovery" and
 consequently, no obligation to reimburse the workers' compensation insurer
 under § 624(e). Because it was undisputed that his noneconomic damages
 greatly exceeded his share of the UIM award, he maintained that no
 reimbursement was required. 

 ¶ 5. For its part, York asserted that Mr. Monroe could not allocate
 all of his UIM award to noneconomic damages and thereby defeat its right to
 reimbursement. Rather, as an initial matter, the award must be apportioned
 fairly between economic and noneconomic damages, with York's statutory
 right to reimbursement attaching to the economic damages portion. The
 superior court agreed with Mr. Monroe's interpretation of § 624(e) and it
 granted summary judgment in his favor. York appeals. 

 ¶ 6. This case presents a legal question, which we review de novo. 
 Charbonneau v. Gorczyk, 2003 VT 105, ¶ 2, 176 Vt. 140, 838 A.2d 117. As
 discussed below, we agree with York that the trial court's construction of
 § 624(e) is inconsistent with our decision in Henry.
 
 ¶ 7. In Henry, we recognized that as a general rule under our
 statute, a workers' compensation insurer is entitled to "first-dollar
 reimbursement" from an injured employee's recovery of damages from a
 third-party, regardless of whether this recovery represents economic or
 noneconomic damages and regardless of whether the employee has been "made
 whole." 2005 VT 68, ¶¶ 6, 8; see also 21 V.S.A. § 624(e) (employer or
 worker's compensation insurer entitled to first-dollar reimbursement from
 "[a]ny recovery" made by injured employee against a third-party for
 damages, after deducting expenses of recovery, with exception discussed
 below). 

 ¶ 8. In 1999, however, the Legislature amended § 624(e) to afford
 special treatment to an employee's recovery of "first party" payments or
 benefits. Specifically, the amendment stated: "Reimbursement required
 under this subsection, except to prevent double recovery, shall not reduce
 the employee's recovery of any benefit or payment provided by a plan or
 policy that was privately purchased by the injured employee, including
 uninsured-under insured motorist coverage, or any other first party
 insurance payments or benefits." 21 V.S.A. § 624(e). We concluded that
 this language changed the general rule cited above, thereby protecting an
 employee's recovery of first-party insurance payments or other benefits
 from the insurer's right to first-dollar reimbursement. Henry, 2005 VT 68,
 ¶¶ 18-19. We did not hold, however, that the injured employee was
 therefore entitled to exempt such recoveries from the reimbursement
 obligation, nor did we conclude that an employee was entitled to be "made
 whole" before a double recovery could occur. See Henry, 2005 VT 68, ¶¶
 23-24. 
 
 ¶ 9. Rather, as stated above, we held that to prevent a "double
 recovery" within the meaning of 21 V.S.A. § 624(e), first-party insurance
 awards must be apportioned between economic and noneconomic damages, with
 the insurer having a right to reimbursement out of the economic damages
 portion. Id.; see also Travelers Ins. Co. v. Henry, 470 F.3d 56, 62 (2d
 Cir. 2006) (recognizing that Vermont Supreme Court in Henry adopted a
 "two-step approach" to reimbursement, which requires a trial court (or
 settling parties) to apportion any recovery under a UIM policy between
 economic and noneconomic damages). Double recovery occurs when the employee
 recovers economic damages from two sources, including first-party sources,
 and thus, the insurer has a right to reimbursement out of the portion of
 the first-party award that is equal to the proportion of the injured
 employee's total economic loss to the total damages sustained. See Henry,
 2005 VT 68, ¶¶ 23-24. 

 ¶ 10. We specifically recognized the possibility that an employee
 and UIM carrier could attempt to structure a settlement agreement that
 would prevent the insurer from exercising its right to reimbursement. Id.
 ¶ 25. For this reason, we held that, in addition to other safeguards, the
 insurer has a right to seek judicial review of settlement agreements to
 ensure that the apportionment of damages was fair and that it fairly
 reflected the injured party's actual economic and noneconomic losses. Id. 
 To be fair and reasonable within the meaning of Henry, a UIM award must be
 apportioned according to the same ratio that an employee's overall economic
 damages have to his overall noneconomic damages. 
 
 ¶ 11. Allocating an entire UIM award to noneconomic damages is
 inconsistent with this approach. Such an allocation does not fairly
 reflect the injured party's actual economic and noneconomic losses, and it
 is not fair or reasonable from the perspective of the workers' compensation
 insurer. While an employee certainly has a persuasive claim that he or she
 should be "made whole" first out of such awards, so too does the workers'
 compensation insurer, which has been paying workers' compensation benefits
 despite the fact that someone other than the employer bears the "legal
 liability" for the damages resulting from the employee's injury. See 21
 V.S.A. § 624(a) (reimbursement statute applies only in cases where injury
 "was caused under circumstances creating a legal liability to pay the
 resulting damages in some person other than the employer"). In cases where
 an employee has incurred significant noneconomic damages, the employee will
 also likely have incurred significant economic damages, and it is likely
 that, taken together, both types of damages will greatly exceed a UIM
 award. 

 ¶ 12. Our approach in Henry recognizes these competing interests and
 attempts to balance them. It gives both the insurer and the employee a
 right to a portion of the first-party proceeds, and holds in essence that
 the "first dollar" of such awards should be shared between them. Because a 
 fair apportionment between economic and noneconomic damages is required
 under Henry and did not occur in this case, we reverse and remand for
 further proceedings. 

 ¶ 13. Although the dissent acknowledges our decision in Henry, it
 nonetheless attempts to interpret § 624(e) anew. In doing so, it relies
 heavily on a decision by the United States Court of Appeals for the Second
 Circuit, Travelers Ins. Co. v. Carpenter, 411 F.3d 323 (2d Cir. 2005),
 which preceded our decision in Henry. See post, ¶¶ 24-27, 37. It also
 cites a workers' compensation treatise, as well as comments made by several
 lobbyists and legislators in connection with the statutory amendment at
 issue. Post, ¶¶ 25-27. Based on these sources, the dissent concludes that
 the legislature plainly intended to allow injured employees to retain UIM
 awards until they are "made whole" for their noneconomic losses. Post, ¶
 36.
 
 ¶ 14. Whatever the value of the sources cited by the dissent, they
 do not change the fact that this Court already adopted a different
 interpretation of § 624(e) in Henry. As discussed above, Henry did not
 make proration optional. Rather, it requires apportionment in every case
 to prevent a double recovery. Indeed, the Second Circuit--in Travelers
 Ins. Co. v. Henry, 470 F.3d at 62--acknowledged that its earlier decision
 in Carpenter was superseded by ours in Henry, and it recognized that, under
 our Henry holding, the first step in the reimbursement process is
 apportioning a UIM award between economic and noneconomic damages. Id. 
 Our interpretation of § 624(e) in Henry plainly controls this case, and
 pursuant to the doctrine of stare decisis, it must be applied here. See,
 e.g., Coyle v. Coyle, 2007 VT 21, ¶ 7, __ Vt. ___, 925 A.2d 996 (mem.)
 (rejecting suggestion that Court revisit its interpretation of certain
 statute, and stating that where certain understanding of statute had been
 established by recent, earlier decision, doctrine of stare decisis was
 controlling).

 Reversed and remanded.
 
 FOR THE COURT:

 _______________________________________
 Chief Justice

------------------------------------------------------------------------------
 Dissenting


 ¶ 15. SKOGLUND, dissenting. Neither the Legislature nor this Court
 in Travelers Insurance Co. v. Henry, 2005 VT 68, 178 Vt. 287, 882 A.2d
 1133, intended to create a scheme that divides UIM benefits between an
 injured employee and the workers' compensation carrier when the injured
 employee's retention of the entire award would not result in a double
 recovery of benefits for the same type of injury. Indeed, the Legislature
 specifically amended our workers' compensation law to overrule this Court's
 prior holdings that gave workers' compensation carriers first-dollar
 recovery of an injured worker's UIM benefits when a stranger to the
 employment relationship was at fault for the worker's injuries. Because I
 find no support in our workers' compensation statute or our case law for
 the majority's narrow interpretation of the term "double recovery" or its
 proration approach for dividing UIM benefits, I respectfully dissent.
 
 ¶ 16. Ryan Monroe was one of six men heading home from work in their
 employer's van when another vehicle crossed the center line and struck the
 van at a high rate of speed. One of the six occupants of the van died, and
 the other five, including plaintiff, were severely injured. As the
 employer's workers' compensation insurance carrier, York Insurance Company
 of Maine, Inc., provided coverage for the injured employees' economic
 damages, but not any of their significant noneconomic damages. After
 dividing the operator's minimal policy funds, the injured workers seek UIM
 coverage under a motor vehicle policy issued to their employer by
 Progressive Casualty Insurance Company. York claims that the statute
 entitles it to "first-dollar" recovery from the percentage of the UIM award
 representing the proportion of economic damages in relation to total
 damages. Monroe (and other claimants who were still in the case at that
 time) contend that York is not entitled to any of the UIM proceeds because
 each of the individual claimant's noneconomic damages far exceeded their
 portion of the UIM award. Thus, according to claimants, there was no
 double recovery that would justify reimbursing York for funds paid for
 their economic damages. The superior court agreed with claimants.

 ¶ 17. Everyone agrees that, as the result of the 1999 amendment to
 21 V.S.A. § 624(e), a workers' compensation carrier that has paid benefits
 to an injured employee to compensate the employee for economic damages such
 as lost wages or medical expenses may not obtain reimbursement from a UIM
 award available to the employee through the employee or employer's
 liability policy,"except to prevent double recovery." (Emphasis added). 
 In this appeal, we must determine what the Legislature meant by the term
 "double recovery" in § 624(e) and whether the Legislature or this Court in
 Henry intended to entitle workers' compensation carriers to be reimbursed
 from an employee's UIM award in a ratio equal to the ratio of the
 employee's economic damages to total damages, irrespective of whether the
 employee's noneconomic damages exceeded the UIM award.
 
 ¶ 18. After examining the language and legislative history of §
 624(e), as well as Henry and other relevant case law, I am convinced that
 the majority's narrow interpretation of the term "double recovery" is
 contrary to legislative intent and that we did not intend Henry to impose
 the mandatory apportionment scheme adopted by the majority today. I would
 hold that a workers' compensation carrier that has paid benefits to an
 injured employee for economic losses is not entitled to reimbursement from
 an injured employee's UIM award if the employee's noneconomic damages
 exceed the amount of the award. In such a situation, there is no double
 recovery because workers' compensation benefits apply only to economic
 losses.

 ¶ 19. A brief history of the relevant statutes and case law is
 necessary to demonstrate why the majority's interpretation of § 624(e) and
 Henry is erroneous. As the superior court stated, the issues presented in
 this case concern the evolution of the social compact created by our
 workers' compensation law, which was intended to offset potentially
 catastrophic consequences of work-related injuries and, at the same time,
 to limit the reach of the employer's liability. Before 1959, acceptance of
 workers' compensation benefits barred an injured employee from recovering
 damages in any other suit; however, commencing with the 1959 amendment to
 the workers' compensation statute, employees eligible to receive workers'
 compensation benefits were permitted to pursue additional common-law
 recoveries against third parties responsible for their injuries. Dubie v.
 Cass-Warner Corp., 125 Vt. 476, 478, 218 A.2d 694, 696 (1966). The
 language from that amendment is essentially the same language now set forth
 in the first two sentences of the current version of § 624(e):
 
 In an action to enforce the liability of a third party, the
 injured employee may recover any amount which the employee or
 the employee's personal representative would be entitled to
 recover in a civil action. Any recovery against the third
 party for damages resulting from personal injuries or death
 only, after deducting expenses of recovery, shall first
 reimburse the employer or its workers' insurance compensation
 carrier for any amounts paid or payable under this chapter to
 date of recovery, and the balance shall forthwith be paid to
 the employee or the employee's dependents or personal
 representative and shall be treated as an advance payment by
 the employer on account of any future payment of compensation
 benefits.

 This language allows the injured employee to recover against a responsible
 third party, but entitles the worker's compensation carrier to
 "first-dollar" reimbursement from any benefits paid for the same injury. 
 The purpose of the amendment was "to save the injured workman's common law
 action, subject only to the employer's subrogation claim for compensation
 previously awarded." Dubie, 125 Vt. at 479, 218 A.2d at 696.
 
 ¶ 20. With the enactment of 23 V.S.A. § 941 in 1967, the Legislature
 required insurers to provide coverage for damages caused by uninsured or
 unknown motorists. Since 1979, § 941 has provided matching UIM protection
 up to the amount that a motorist acquires to insure against the motorist's
 own liability. We addressed the interaction between § 624(e) and § 941 in
 Travelers Cos. v. Liberty Mutual Insurance Co., 164 Vt. 368, 670 A.2d 827
 (1995). Reasoning that a third party is any party that is not the workers'
 compensation carrier, the injured worker, or the injured worker's employer,
 we held "that a workers' compensation insurer who has paid out benefits is
 entitled to reimbursement from UM/UIM payments made by an employer's
 liability carrier." Id. at 373, 670 A.2d at 827, 829. The following year,
 in Brunet v. Liberty Mutual Insurance Group, we held further that where a
 worker could recover both economic and noneconomic damages from a third
 party, the plain language of § 624(e) allowed the workers' compensation
 carrier to "recoup its compensation award from any recovery obtained in a
 third-party suit." 165 Vt. 315, 317, 682 A.2d 487, 488 (1996). These two
 cases held that a worker's compensation carrier is entitled to (1)
 subrogation against an injured employee's benefits obtained from the
 employee's or employer's UIM coverage just as if the employee had received
 payments from a third party and (2) first-dollar recovery irrespective of
 the proportion of economic to noneconomic damages.

 ¶ 21. As we recognized in Henry, however, the Legislature enacted an
 amendment to § 624(e) in 1999 that effectively overruled our decisions in
 Travelers Cos. and Brunet. See 2005 VT 68, ¶ 22. We concluded "that by
 amending the statute the Legislature intended to change the result reached
 in Travelers Cos. and Brunet, and protect an employee's UIM recovery from a
 workers' compensation carrier's right to "first dollar" reimbursement." 
 Id. The Legislature did so by adding a third sentence to 21 V.S.A. §
 624(e):

 Reimbursement required under this subsection, except to
 prevent double recovery, shall not reduce the employee's
 recovery of any benefit or payment provided by a plan or
 policy that was privately purchased by the injured employee,
 including uninsured-under insured motorist coverage, or any
 other first-party insurance payments or benefits.
 
 ¶ 22. This is the statutory language at issue in this appeal. The
 amendment plainly categorizes UIM benefits as first-party benefits that
 "shall not" be reduced through reimbursement to the workers' compensation
 carrier, "except to prevent double recovery." The amendment does not set
 forth any scheme to apportion UIM benefits according to the ratio of
 noneconomic damages to overall damages. Rather, the statute now flatly
 provides that the employee is entitled to UIM benefits as first-party
 benefits, and that workers' compensation carriers may not reduce the
 employee's recovery of those benefits through reimbursement except to
 prevent double recovery. The term "double recovery" presumably refers to
 economic damages--the only type of damages paid by workers' compensation
 carriers.

 ¶ 23. In Henry, we reiterated that the 1999 amendment to § 624(e)
 precisely addressed the insured's contractual right under his employer's
 liability policy "to receive [UIM] benefits directly from his employer's
 insurer." 2005 VT 68, ¶ 14 ("It is Henry's direct right to claim UIM
 benefits, as an insured under the employer-purchased policy, that confers
 first-party status to him respecting such benefits."). As we stated in
 Henry, "the Legislature's intent is clear from the plain language of the
 statute--an employee's recovery of UIM proceeds under an automobile
 liability policy purchased by his employer is a 'first-party insurance
 payment or benefit' that is not subject to the workers' compensation
 carrier's right to reimbursement except to prevent a double recovery." Id.
 ¶ 11. In short, UIM benefits are first-party benefits to which the injured
 employee is entitled, even if the liability policy providing the UIM
 benefits was purchased by the employer rather than the employee. Given the
 plain statements of both the Legislature and this Court that injured
 employees are entitled UIM benefits as first-party proceeds, I fail to
 grasp the majority's reasoning that workers' compensation carriers should
 be "made whole" because they have been paying benefits even though a third
 party is legally liable for the employee's injury. Ante ¶ 10. 
 
 ¶ 24. The remaining question, then, is what constitutes a double
 recovery. In Henry, we construed the 1999 amendment to answer a question
 certified to us from the United States Second Circuit Court of Appeals, but
 did not explicitly define the meaning of the term "double recovery." As
 the superior court noted, although we explicitly rejected the insurer's
 argument that the term "double recovery" means a recovery from both the
 workers' compensation carrier and another party for the same injury, we
 only obliquely addressed, without deciding, the injured employee's argument
 there is no double recovery until an employee has been made whole. See
 Henry, 2005 VT 68, ¶ 13-14.

 ¶ 25. The Second Circuit, however, did directly address the meaning
 of the term "double recovery" in § 624(e) in a decision that was issued
 four days before this Court issued Henry. Travelers Ins. Co. v. Carpenter,
 411 F.3d 323 (2d Cir. 2005). After examining the legislative history of
 the 1999 amendment to § 624(e) and the treatment of the meaning of the term
 "double recovery" in the leading treatise on workers' compensation, the
 court in Carpenter held that "under § 624(e) as amended in 1999, the
 insurer has no right to reimbursement unless and until the injured worker
 has received compensation in excess of the total damages sustained." Id.
 at 324-25.
 
 ¶ 26. Regarding the 1999 amendment's legislative history, the Second
 Circuit noted that an insurance representative argued in opposition to the
 amendment and that "[t]he proponent of the amendment was the AFL-CIO, which
 represented it as legislation intended to reverse the Vermont Supreme
 Court's decision in Travelers Cos." Id. at 336. At a committee hearing on
 the amendment, a key supporter of the bill "testified that the amendment
 was intended to allow an injured worker to be made whole from his or her
 own UIM insurance instead of using the proceeds of that insurance to
 reimburse the workers' compensation insurance carrier." Id. Following
 statements from lobbyists, one of the senators on the committee argued in
 favor of the amendment because it was fair to make the injured employee
 whole. Id. at 337. The chief sponsor of the amendment from the Senate
 agreed that it was justified because injured employees should be entitled
 to collect on UIM benefits for which they have paid. Id. The Legislature
 ultimately passed the amendment in essentially the same form as presented
 to the committee. Id. Thus, as the Second Circuit found, the legislative
 history strongly suggests that the 1999 amendment was intended to allow
 injured workers to retain UIM benefits and to preclude workers'
 compensation insurers from being reimbursed from such benefits to the
 extent that an injured worker had not been made whole. 

 ¶ 27. The court in Carpenter also reviewed the leading treatise on
 workers' compensation law, which states that "double recovery" can mean
 either (1) " 'recovering from two sources a combined amount that is greater
 than the plaintiff's actual total damages' "--referred to as actual double
 recovery, or (2) " 'getting recoveries from two sources, whether or not the
 aggregate amount equals or exceeds actual damages' "--referred to as double
 source recovery. Id. at 334 (quoting 6 A. Larson, Larson's Workers'
 Compensation Law § 110.05[8], at 110-23 (2004)). As the court noted, the
 Larson treatise concludes "that an insurer's right to reimbursement of UIM
 proceeds should be subject to a limitation on double recovery only in the
 sense of recovery of more than the total damages sustained." Id. at 335
 (citing 6 Larson's Workers' Compensation Law § 110.05[8]); see M. Kolter,
 And the Lion Shall Lay Down With the Lamb: Third-Party Actions Under
 Vermont Workers' Compensation Law, 28 Vt. B.J. 30, 33 (2002) ("The plain
 language of Section 624(e) provides that if there is no double recovery,
 the employee is entitled to keep all of the proceeds from insurance
 policies he or she purchased, without reimbursement to the employer or
 carrier.").

 ¶ 28. The underlying policy basis for this conclusion is the
 "elementary" notion that "the central purpose of [workers' compensation and
 UIM statutes] is protection of the injured person." 6 Larson's Workers'
 Compensation Law § 110-22. As the Larson treatise explains:

 We are now ready to ask: is the second sort of double
 recovery [double source recovery] obnoxious to the policies
 of compensation acts or uninsured motorist acts, or to public
 policy in general? The question almost answers itself. 
 There can be no conceivable objection to allowing an injured
 person to retain two recoveries that, when combined, still do
 not make him or her whole.
 
 Id. at 110-23 (emphasis added).

 ¶ 29. In Henry, we neither examined the legislative history to the
 1999 amendment nor consulted the leading treatise on the subject, but we
 explicitly rejected the insurer's argument advocating double source
 recovery, stating that such an interpretation "would render the 1999
 amendment a nullity." 2005 VT 68, ¶ 21. Instead, we concluded that "[t]he
 question of whether an employee has received a double recovery can be
 answered only after the nature and extent of the injured employee's damages
 has been determined." Id. ¶ 1. In arriving at this latter conclusion, we
 reasoned that although the 1999 amendment was plainly intended to "change
 the result" in Travelers Cos. and Brunet and "protect an employee's UIM
 recovery from a workers' compensation carrier's right to 'first-dollar'
 reimbursement," the Legislature also intended to prevent double recoveries,
 thereby requiring "an inquiry into the nature of the damages recovered
 under first-party insurance policies." Id. ¶ 22.
 
 ¶ 30. To address the question of what constitutes a double recovery,
 we revived a previously applied but later rejected approach that
 distinguished between economic and noneconomic damages. See id. ¶¶ 22-24
 (discussing St. Paul Fire & Marine Ins. Co. v. Surdam, 156 Vt. 585, 589-90,
 595 A.2d 624, 626 (1991)). In Surdam, we concluded that a workers'
 compensation carrier that had paid benefits to an injured employee was not
 entitled to reimbursement from monies obtained by the employee in a
 personal injury action against a third party in New York state because (1)
 New York law limited an employee's recovery from a third party to only
 noneconomic damages, and (2) workers' compensation benefits compensate
 employees for only economic damages. 156 Vt. at 587-88, 595 A.2d at 265. 
 In so holding, we reasoned that "[t]he Vermont Legislature could not have
 intended that an injured employee must lose a noneconomic recovery to pay
 back economic damages received from a workers' compensation carrier." Id.
 at 590, 595 A.2d at 266.

 ¶ 31. We declined to extend the reasoning of Surdam in Brunet,
 noting that Vermont, unlike New York, does not limit injured employees to
 noneconomic damages in third-party suits. Instead, we held that "the
 workers' compensation carrier may recoup its compensation award from any
 recovery obtained in a third-party suit." Brunet, 165 Vt. at 317, 682 A.2d
 at ___. Nevertheless, as indicated above, the Legislature intended the
 1999 amendment to § 624(e) to negate our decision in Brunet. Moreover, we
 explicitly found the Surdam approach distinguishing between economic and
 noneconomic damages to be "persuasive in the context of an employee's
 recovery of UIM benefits" because "the plain meaning of the amended statute
 indicates the Legislature's intent to protect an employee's UIM benefits to
 the extent that it does not represent a double recovery." Henry, 2005 VT
 68, ¶ 23.

 ¶ 32. Hence, for the purpose of assuring against a double recovery,
 we concluded in Henry that

 when an injured party recovers damages under an
 employer-purchased insurance policy, or any other first-party
 insurance policy, the settling parties, or the trial court,
 must apportion the award between economic and noneconomic
 damages. . . . If the employee recovers [economic] damages
 and has already been compensated for these losses by the
 insurer, the insurer is entitled to reimbursement to prevent
 a double recovery."

 Id. ¶ 24. We reasoned that, because our workers' compensation law does not
 compensate an employee for noneconomic losses, "there is no danger of a
 double recovery [for such losses], and the insurer is not entitled to
 reimbursement from this portion of the employee's award." Id.
 
 ¶ 33. Focusing on these statements, the majority apparently
 concludes that Henry required the apportionment of UIM benefits according
 to the ratio of the employee's economic damages to total damages in all
 cases--even if the injured employee's noneconomic damages exceed the UIM
 award--and that the workers' compensation carrier is entitled to
 first-dollar reimbursement of the economic damages portion of the award. I
 disagree. Henry neither requires apportionment of UIM awards in all
 instances nor creates a proration system that reimburses the workers'
 compensation carrier from a portion of first-party UIM awards when the
 injured employee's noneconomic damages exceed the entire UIM award.

 ¶ 34. As the superior court recognized, a remand was necessary in
 Henry because of our uncertainty regarding the limitations of the
 stipulation in that case. The parties had stipulated that, for the purpose
 of determining their respective rights to the UIM proceeds, Henry's total
 damages equaled the sum of the UIM award and the total amount of workers'
 compensation benefits paid through the date of the court's final judgment
 order. Because the record did not show any breakdown between the
 claimant's economic and noneconomic damages, this Court understandably was
 not willing to speculate as to what that breakdown might be and how it
 might effect reimbursement for economic losses paid by the workers'
 compensation carrier.
 
 ¶ 35. To be sure, in Henry we emphasized the importance of
 distinguishing between the economic and noneconomic damage component of UIM
 awards, and we required the settling parties or trial court to apportion an
 award between such types of damages for the purpose of preventing double
 recovery. But apportioning a UIM award into economic and noneconomic
 damages is necessary only if the award arguably exceeds the injured
 employee's noneconomic damages, in which case there is the potential for
 double recovery. Because the parties' stipulation had not specified the
 nature of the damages and had indicated that the total damages were the sum
 of the UIM coverage plus the total amount of workers' compensation benefits
 paid through the date of the final judgment order, a remand was necessary
 so that the trial court could determine what portion of the injured
 employee's recovery should be attributable to economic damages. Id. ¶¶ 19,
 26.

 ¶ 36. Here, the parties agree that Monroe's noneconomic damages far
 exceeded the total UIM award. The trial court found that each individual
 claimant's noneconomic damages "greatly" exceeded the $75,000 portion of
 the UIM award obtained by each of them, including Monroe. York does not
 challenge this finding. As we stated in Henry, 2005 VT 68, ¶ 14, the 1999
 amendment to § 624(e) confirms the principle that an injured worker has a
 direct right to claim UIM benefits under an employer-purchased policy
 conferring first-party status to the worker with respect to such benefits. 
 Thus, to the extent that a worker has incurred noneconomic damages
 uncompensated by workers' compensation payments, the worker is entitled to
 have those damages covered by any available first-party UIM benefits on a
 first-dollar basis. In such a scenario, there is no double recovery
 because workers' compensation benefits cover only economic damages. 
 Therefore, irrespective of the ratio of economic to noneconomic damages,
 Monroe would not be obtaining a double recovery by keeping the entire UIM
 award and applying it to his noneconomic damages. Because York had paid
 for Monroe's economic damages only, it could not seek reimbursement from a
 UIM award that was insufficient to cover Monroe's noneconomic injuries.
 
 ¶ 37. In short, the mandatory apportionment scheme imposed by the
 majority today is not compelled by our Henry decision, and, in any event,
 is inconsistent with the Legislature's intent regarding the 1999 amendment
 to § 624(e). In that amendment, the Legislature plainly evinced its intent
 to allow injured employees to retain UIM awards to the extent that
 retention of the award did not amount to a double recovery--in other words,
 to the extent that the UIM award could be applied to injuries for which the
 workers' compensation carrier had not compensated them. That is what
 occurred in this case because Monroe's extensive noneconomic injuries,
 which were not covered by the workers' compensation carrier, far exceeded
 the amount of his UIM award. I would hold that a "double recovery" as
 specified in § 624(e) for UIM and other first-party awards does not occur
 until an employee has been made whole out of such awards for noneconomic
 losses not covered by the workers' compensation insurer. This approach is
 not "unfair" to the workers' compensation carrier.
 
 ¶ 38. As noted, the Second Circuit held in Carpenter that § 624(e)
 exempts UIM proceeds from reimbursement to the workers' compensation
 carrier "except to the extent that those proceeds compensate an injured
 worker for more than the maximum recoverable loss that the worker has
 sustained." 411 F.3d at 337. I recognize that on remand from this Court's
 Henry decision, the Second Circuit felt constrained--notwithstanding its
 reiteration that § 624(e) was intended to prevent only actual double
 recovery--to adopt a modified proration approach with respect to the
 distribution of UIM benefits. See Travelers Ins. Co. v. Henry, 470 F.3d
 56, 64 (2d Cir. 2006) (requiring the district court to apportion the UIM
 award between noneconomic and economic damages and to reimburse the
 workers' compensation carrier for the economic portion of the award to the
 extent that, in combination with the workers' compensation benefits, it
 exceeds the employee's total economic damages). Nevertheless, I disagree
 with the approach set forth therein, to the extent that it would require
 injured workers whose UIM awards do not fully compensate them for their
 noneconomic injuries to reimburse workers' compensation carriers from such
 awards for the payment of benefits covering solely economic losses. Our
 decision in Henry does not require such a result, even if the Second
 Circuit assumed that it did.

 ¶ 39. The majority concludes that "it is not fair or reasonable from
 the perspective of the workers' compensation insurer" to allow a profoundly
 injured employee to keep his entire UIM award, given that "someone other
 than the employer bears the 'legal liability' for the damages resulting
 from the employee's injury." Ante, ¶ 10. This reasoning is seriously
 flawed in the sense that both the Legislature and this Court have
 recognized that a UIM award is a first-party rather than a third-party
 recovery. Moreover, the conclusion is bereft of any notion of fairness or
 reasonableness from the perspective of the injured employee, who must now
 give up a portion of his UIM award to reimburse the workers' compensation
 carrier for its payment of the employee's economic losses, even though the
 award hardly begins to cover the employee's noneconomic injuries, including
 pain and suffering.

 ¶ 40. For the reasons set forth above, I would affirm the superior
 court's decision. I am authorized to state that Justice Johnson joins in
 this dissent.

 _______________________________________
 Associate Justice