2012 VT 93

# Estate of Monica Dunn v. Windham Northeast Supervisory Union

[60 A.3d 680]

No. 11-419

Present: Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.

Opinion Filed October 26, 2012

*Jennifer K. Moore* of *Ellis Boxer & Blake*, Springfield, for Plaintiff-Appellee.

*Keith J. Kasper* of *McCormick, Fitzpatrick, Kasper & Burchard, P.C.*, Burlington, for Defendant-Appellant.

¶ 1. **Reiber, C.J.** This case asks us to determine whether a workers' compensation insurer is entitled to reimbursement[*] of death benefits it has paid when a claimant's beneficiary also receives proceeds from a life-insurance policy. We hold that under 21 V.S.A. § 624(e) a workers' compensation carrier cannot seek reimbursement from life-insurance payments because such proceeds are not "damages," as contemplated by the statute, paid because of a third party's tortious actions. We therefore affirm the Commissioner of Labor's grant of summary judgment to the estate of claimant, Monica Dunn.

¶ 2. The underlying facts are not disputed. Claimant was an employee of Windham Northeast Supervisory Union. In October 2009, claimant died of complications from surgery to treat a work-related knee injury. Windham's workers' compensation insurer, the Vermont School Boards Insurance Trust (VSBIT), began paying workers' compensation death benefits to her estate. Claimant also held a life insurance policy, which named her husband as her beneficiary. The plan provided for a lump-sum payment upon proof of her death, as well as payments of $3000 a year per child for up to four years while the children attended college.

¶ 3. Windham/VSBIT sought reimbursement of the death benefits it had paid, and a credit against future benefits, to the extent

---

[*] "Reimbursement" and "offset" in the context of workers' compensation recoupment achieve an identical economic outcome. See *Travelers Ins. Co. v. Henry*, 2005 VT 68, ¶ 18, 178 Vt. 287, 882 A.2d 1133. For simplicity, we use the term "reimbursement" throughout this opinion to address both concepts.

of claimant's husband's receipt of life-insurance proceeds. The parties agreed to submit cross-motions for summary judgment following an informal conference at the Department of Labor in June 2011. The motions sought to settle the preliminary issue of whether Windham/VSBIT could claim reimbursement of the benefits pursuant to 21 V.S.A. § 624(e). Windham/VSBIT argued that claimant's receipt of both workers' compensation and life-insurance proceeds was the type of double recovery § 624(e) was designed to prevent. Claimant's estate, meanwhile, contended that the reimbursement provisions apply only to money employees recover from third parties who are responsible for their injuries. The Commissioner, agreeing with claimant's estate, concluded an employer's right to workers' compensation reimbursement under § 624(e) attaches only to damages received from a third-party tortfeasor. The Commissioner reasoned that any right to reimbursement to prevent double recovery "is specifically tied to the 'recovery against the third party for damages'" as discussed in the reimbursement provision. Even if the statute were construed to permit reimbursement out of proceeds from *any* third party, including a life insurer, life-insurance payments made to claimant's beneficiaries did not constitute "damages," which the Commissioner defined as "a sum of money awarded to a person injured by the tort of another." Windham/VSBIT now appeals.

¶ 4. The Department of Labor certified the following question: "Is [Windham/VSBIT] entitled to an offset under 21 V.S.A. § 624(e) for the workers' compensation benefits paid and/or payable on account of Claimant's death from the proceeds of a life insurance policy?" See 21 V.S.A. § 672 ("The jurisdiction of [the Supreme Court] shall be limited to a review of questions of law certified to it by the commissioner.").

■ ■ ¶ 5. We review questions of law de novo. See *Smith v. Desautels*, 2008 VT 17, ¶ 12, 183 Vt. 255, 953 A.2d 620 (noting statutory construction "is a pure question of law"). "If the meaning of the disputed statutory language is unambiguous and resolves the conflict without doing violence to the legislative scheme, we accept the plain meaning as the intent of the Legislature without looking further." *Town of Killington v. State*, 172 Vt. 182, 188, 776 A.2d 395, 400 (2001) (quotations omitted). We will affirm the Commissioner of Labor's conclusions regarding the workers' compensation statutes when they "are supported by the findings and reflect the correct interpretation of the law." *Morin*

*v. Essex Optical/The Hartford*, 2005 VT 15, ¶ 4, 178 Vt. 29, 868 A.2d 729 (quotations omitted).

¶ 6. Vermont's workers' compensation reimbursement statute provides, in relevant part, that:

(a) Where the injury for which compensation is payable under the provisions of this chapter was caused under circumstances creating a legal liability to pay the resulting damages in some person other than the employer, the acceptance of compensation benefits or the commencement of proceedings to enforce compensation payments shall not act as an election of remedies, but the injured employee or the employee's personal representative may also proceed to enforce the liability of such third party for damages in accordance with the provisions of this section. If the injured employee or the employee's personal representative does not commence the action within one year after the occurrence of the personal injury, then the employer or its insurance carrier may, within the period of time for the commencement of actions prescribed by statute, enforce the liability of the third party in the name of the injured employee or the employee's personal representative. . . .

. . . .

(e) In an action to enforce the liability of a third party, the injured employee may recover any amount which the employee . . . would be entitled to recover in a civil action. Any recovery against the third party for damages resulting from personal injuries or death only . . . shall first reimburse the employer or its workers' compensation insurance carrier . . . . Reimbursement required under this subsection, except to prevent double recovery, shall not reduce the employee's recovery of any benefit or payment provided by a plan or policy that was privately purchased by the injured employee, including uninsured-under insured motorist coverage, or any other first party insurance payments or benefits.

21 V.S.A. § 624.

¶ 7. Windham/VSBIT contends principally that claimant's life insurer is a "liable" third party under § 624(e) and that the

proceeds it paid constitute a "recovery of damages" that is subject to reimbursement to prevent an insured's double recovery from a first-party insurance benefit. We disagree.

■ ■ ¶ 8. At the outset, we note that the workers' compensation reimbursement provisions must be read as a harmonious whole. See *Trickett v. Ochs*, 2003 VT 91, ¶ 22, 176 Vt. 89, 838 A.2d 66 (noting that individual provisions must be construed in light of the entire statutory framework). Taking the statutory language as a whole, we conclude that a workers' compensation carrier is entitled to reimbursement only when a claimant or — in this case, a claimant's estate — receives money for damages because of a third party's responsibility for an injury. This is the case whether the claimant receives payment directly from the tortfeasor or, as happens frequently, from the third party's own liability insurer.

■ ■ ¶ 9. In its introductory sentence, § 624(e) discusses reimbursement in the context of an action to "enforce the liability of a third party." The liability a covered employee may seek to enforce under this subsection, in turn, arises when the injury "was caused under circumstances creating a legal liability to pay the resulting damages in some person other than the employer." § 624(a). Windham/VSBIT urges us to equate a life-insurer's contractual obligation to pay a fixed sum in the event of an insured's death with the "legal liability" to pay "resulting damages" to which the reimbursement statute refers. Given the statute's wording, however, it is clear that the circumstances causing the injury must be the circumstances that create the liability to compensate it. This is to say, the statute necessarily refers to a cause of action an employee may maintain against a person responsible for her injuries. Indeed, the statute permits an employer or its carrier to commence such an action on behalf of the injured employee if the employee does not do so herself within a year. § 624(a).

■ ¶ 10. The statute's use of the word "damages" confirms our conclusion that an employer's right to reimbursement of workers' compensation benefits is limited to situations in which an employee is entitled to receive money from a third party because of a third party's malfeasance. "Damages," as the Commissioner recognized, is a term of art. They are generally understood to consist of a "sum of money which the law awards or imposes as pecuniary compensation, recompense, or satisfaction for an injury

done or a wrong sustained." Ballentine's Law Dictionary 303 (3d ed. 1969); see also Black's Law Dictionary 445 (9th ed. 2009) (defining damages as "[m]oney claimed by, or ordered to be paid to, a person as compensation for loss or injury"). No wrong is required to trigger the payment of a life insurance policy; only the occurrence of a specified event: death. There is no indication here that the Legislature intended to deviate from the normal legal meaning of "damages." See *State v. Filippo*, 172 Vt. 551, 552, 772 A.2d 531, 532 (2001) (mem.) (presuming Legislature intends common meanings).

■■ ■■ ¶ 11. Our conclusion regarding the scope of an employer's right to workers' compensation reimbursement is in keeping with our long-standing interpretation of the statute. As we have observed, the reimbursement statute aims to create a fair result for all parties. *St. Paul Fire & Marine Ins. Co. v. Surdam*, 156 Vt. 585, 590, 595 A.2d 264, 266 (1991). "When *a third party is found responsible* in a personal injury action for damages suffered by the worker, the worker is not permitted double recovery . . . . Rather, the law evens out the consequences by permitting the [workers' compensation] carrier to recoup the benefits it paid the worker." *Id.* (emphasis added). Under our workers' compensation scheme:

> [T]he insurance carrier, representing the employer, comes out even, being without fault or injury; the third party wrongdoer pays exactly the damages he would have paid without any workers' compensation law; the attorney is reimbursed for services rendered, and the employee — in addition to what he has already received in compensation benefits — is entitled to the remainder.

*LaBombard v. Peck Lumber Co.*, 141 Vt. 619, 624, 451 A.2d 1093, 1096 (1982).

■■ ¶ 12. The same fairness rationale underpins the requirement under § 624(e) that first-party underinsured-motorist awards — when they are subject to the workers' compensation reimbursement statute — be apportioned between economic and noneconomic damages to determine the extent to which a carrier may be entitled to recoup a portion of its payments. See *Progressive Cas. Ins. Co. v. Estate of Keenan*, 2007 VT 86, ¶ 11, 182 Vt. 298, 937 A.2d 630 ("While an employee certainly has a persuasive claim

that he or she should be 'made whole' first out of such awards, so too does the workers' compensation insurer, which has been paying workers' compensation benefits despite the fact that *someone other than the employer bears the 'legal liability' for the damages resulting from the employee's injury.*" (emphasis added)).

¶ 13. Here, claimant's family has received life-insurance proceeds deriving from the insurer's contractual obligation to make payment upon the occurrence of a specified event. See 1 E. Holmes & M. Rhodes, Holmes's Appleman on Insurance § 1.25, at 124 (2d ed. 1996) ("Immediately upon the payment of the first premium, the insured attains an estate, in the event of his death, of a fixed amount, determined by the face of the policy."). Claimant's beneficiaries received the life-insurance proceeds because she died, not because of a third party's actions. Thus, there is no third party whose malfeasance would occasion the need to more equitably distribute financial responsibility for claimant's injury.

¶ 14. Windham/VSBIT correctly observes that some first-party insurance benefits may be subject to reimbursement, noting our conclusion that uninsured/underinsured motorist insurance payments are subject to apportionment and reimbursement insofar as necessary to prevent a "double recovery" of economic damages. See *Travelers Ins. Co. v. Henry*, 2005 VT 68, ¶ 11, 178 Vt. 287, 882 A.2d 1133 ("[A]n employee's recovery of UIM proceeds . . . is a 'first party insurance payment or benefit' that is not subject to the workers' compensation carrier's right to reimbursement except to prevent a double recovery."). That does not, however, mean that all first-party benefits will trigger this right. When the Legislature added § 624(e)'s "first party" language it did so primarily to "clarif[y] that any workers' compensation recovery will not be diminished by the proceeds from any plan or policy privately purchased by the injured employee, or by any other first party insurance payments or benefits that flow to the claimant." Act Summary, 1999, No. 41, available at http://www.leg.state.vt.us/docs/2000/acts/act041sum.htm. The amendment was not intended to establish a right to reimbursement from first-party insurance plans, but rather to "change the result reached in *Travelers Cos. [v. Liberty Mutual Ins. Co.*, 164 Vt. 368, 374, 670 A.2d 827, 830 (1995)] . . . and protect an employee's UIM recovery from a workers' compensation carrier's right to 'first dollar' reimbursement." *Henry*, 2005 VT 68, ¶ 22. The final sen-

tence of § 624(e), thus, must be understood to limit the scope of a workers' compensation carrier's potential recovery from first-party insurance proceeds to situations in which reimbursement, as defined in the preceding sentences, is "required under this subsection." § 624(e). As we have indicated, reimbursement is not required unless an employee receives damages as the result of a third party's tortious actions.

¶ 15. According to Windham/VSBIT, life-insurance proceeds should be viewed as damages in the same manner that uninsured motorist coverage payments are and should thus trigger a workers' compensation carrier's right to reimbursement. Windham/VSBIT maintains that to the extent that these first-party life-insurance benefits compensate the same economic losses that workers' compensation death benefits do, the life-insurance proceeds must be apportioned between noneconomic damages and economic damages, which may be tapped for reimbursement. See *Henry*, 2005 VT 68, ¶¶ 11-12. Again, we disagree.

¶ 16. Windham/VSBIT's contention overlooks a key distinction between uninsured motorist coverage and life insurance. As we observed in *Travelers Cos.*, uninsured motorist insurance payments function effectively as compensation for tort damages, the payment of which is contingent on a third party's relative fault. 164 Vt. at 374, 670 A.2d at 830 (abrogated on other grounds by statute, 21 V.S.A. § 624(e), as recognized in *Henry*, 2005 VT 68, ¶ 14); see also 23 V.S.A. § 941(a) (requiring automobile liability coverage to include UM/UIM coverage "for the protection of persons . . . *entitled to recover damages*, from owners or operators of uninsured, underinsured or hit-and-run motor vehicles" (emphasis added)). UM/UIM coverage essentially provides a victim with the compensation she would otherwise have received had the wrongdoer been adequately insured. Life insurance functions differently: Payments are not contingent on a third party's wrongdoing, nor are they necessarily directly linked to a quantifiable, compensable harm, either economic or noneconomic. They are contractual benefits paid simply upon proof of death. See 1 L. Russ & T. Segalla, Couch on Insurance § 1:39 (3d ed. 2005) ("It is generally agreed that a life insurance policy is not a contract for indemnity in the strict sense of most other types of insurance, but is a contract to pay a certain sum of money in the event of death. . . . [D]eath is not a 'loss[]' in the sense in which that term is applied in property insurance."); see also Holmes, *supra*, at 123

("A life policy is a contract to pay a certain sum of money to a payee on death of the life insured.").

¶ 17. This difference in functioning is at least part of the reason that life-insurance proceeds are simply not susceptible to the type of apportionment between economic and noneconomic damages that would be necessary to prevent a "double recovery" under the workers' compensation statute. See *Progressive Cas. Ins. Co.*, 2007 VT 86, ¶ 9 ("Double recovery occurs when the employee recovers *economic damages* from two sources . . . ." (emphasis added)). "Workers' compensation benefits reflect an employee's economic losses." *Henry*, 2005 VT 68, ¶ 24 (citation omitted). As with tort-related economic damages, workers' compensation payments thus bear a direct relationship to the nature and scope of the harm suffered. As we have observed, a life insurer's contractual obligation to pay a beneficiary's designee merely upon the occurrence of a specified event, however, is unrelated to the nature and extent of the harm.

¶ 18. To be sure, people purchase life insurance to insulate beneficiaries from the economic impact of lost wages or burial costs, which workers' compensation death benefits partially address. See 21 V.S.A. § 632 (outlining workers' compensation death benefits including burial expenses and wage replacement). But the amount that a lump-sum life-insurance policy pays out bears no relationship to the costs an estate or a policy's named beneficiaries actually sustain. Nor is the purpose of life insurance contractually limited in any way, or conditioned on, compensating such readily ascertainable economic losses. A life-insurance policy may, for example, help the insured:

> take care of such contingencies as costs of last sickness and burial, family income after the insured dies, protection against foreclosure of a mortgage after the insured's death from inability to meet the payments, educational expenses, dependent relatives, protection for old age, business protection, protection to creditors, inheritance taxes, and many other possible catastrophes.

Holmes, *supra*, at 125. Life-insurance policies may be obtained for a host of purposes, some of which may be known only to the purchaser, but these purposes are never made a condition of the insurer's obligation to pay any measure thereof.

¶ 19. In the context of damage awards and settlement agreements, the workers' compensation statute provides safeguards to prevent recipients from improperly allocating the entirety of first-party proceeds to noneconomic losses, thereby defeating a carrier's right to reimbursement of economic-loss payments. See *Henry*, 2005 VT 68, ¶ 25. In addition to a notification requirement and subrogation rights in the event of an employee's failure to pursue a suit against a liable third party, a workers' compensation carrier has a right to seek judicial review of settlement agreements. *Id.* In such cases, where an employee's receipt of payment is conditioned on the demonstration of a particular loss, these mechanisms permit an objective inquiry into the proper allocation of proceeds. Because the amount a life-insurance policy pays is not conditioned on particular losses, no such inquiry is possible.

¶ 20. In sum, 21 V.S.A. § 624(e) does not permit a workers' compensation insurer to tap a claimant's life-insurance proceeds for reimbursement because the proceeds of that particular type of first-party policy do not constitute damages paid because of a third party's action. We affirm.

*Affirmed.*