2005 VT 68

## Travelers Insurance Company v. John P. Henry

[882 A.2d 1133]

No. 04-174

Present: **Reiber, C.J., Dooley, Johnson and Skoglund, JJ., and Allen, C.J. (Ret.),** **Specially Assigned**

Opinion Filed June 24, 2005

Motion for Reargument Denied August 5, 2005

*Stephen D. Ellis* and *Jennifer K. Moore* of *Kiel Ellis & Boxer*, Springfield, for Plaintiff-Counter-Defendant-Appellant.

*Craig Weatherly* of *Gravel and Shea*, Burlington, for Defendant-Counter-Claimant-Appellee.

¶ 1. **Reiber, C.J.** In this appeal, we are asked by the United States Court of Appeals for the Second Circuit to answer the following certified question: under 21 V.S.A. § 624(e), does a workers' compensation carrier have a right to reimbursement from, or a future credit against, underinsured/uninsured (UIM) benefits recovered by an injured employee under an automobile liability policy that was purchased by his employer?[1] As discussed below, we conclude that under the plain language of 21 V.S.A. § 624(e) a workers' compensation carrier does not have a right to be reimbursed out of such proceeds, nor to have the balance of the proceeds treated as a credit against future payment of benefits, except to prevent a double recovery. The question of whether an employee has received a double recovery can be answered only after the nature and extent of the injured employee's damages has been determined. When this determination has been made, the extent of a workers' compensation carrier's right to reimbursement or to a credit against future payments can be ascertained.

---

[1] We have reformulated the original certified questions. See V.R.A.P. 14(b). The questions certified to this Court were: (1) what effect, if any, does the 1999 amendment to 21 V.S.A. § 624(e) have on a workers' compensation carrier's right to obtain reimbursement from an injured worker's recovery of proceeds under an underinsured/uninsured (UIM) insurance policy that was not "privately purchased by the injured employee"?; and (2) what effect, if any, does the 1999 amendment to 21 V.S.A. § 624(e) have on a workers' compensation carrier's right to a credit against future benefits from an injured worker's recovery of proceeds under a UIM policy that was not "privately purchased by the injured employee"?

¶ 2. The underlying facts are undisputed. In December 1999, defendant John Henry was seriously injured in a two-car automobile accident that occurred during the course of his employment. The driver of the second car, Kristy Herrick, was solely responsible for the accident. Henry received workers' compensation benefits from plaintiff Travelers Insurance Company, his employer's workers' compensation carrier. He also recovered $100,000 in damages from Herrick's personal liability insurer, the limit of the policy. After deducting the costs of recovery (including attorney's fees), $66,060.75 of this money was paid to Travelers ($56,004.42 for a lien and $10,103.83 as an advance payment of permanency benefits not yet paid). Henry also sought to recover under the UIM provisions of two automobile liability policies: one that he had purchased himself, which had a policy limit of $100,000, and one that had been purchased by his employer, and issued by Travelers, with a policy limit of $400,000.

¶ 3. In August 2001, Travelers filed a declaratory judgment action in the United States District Court for the District of Vermont seeking a declaration that pursuant to 21 V.S.A. § 624(e) it was entitled to reimbursement from all of the UIM proceeds that Henry recovered. According to Travelers, Henry's recovery of UIM proceeds in addition to his receipt of workers' compensation benefits constituted a "double recovery" within the meaning of 21 V.S.A. § 624(e). Thus, Travelers sought reimbursement out of the UIM proceeds for the workers' compensation benefits that it had paid up to the date of recovery, as well as a credit toward any future benefits that it would be obligated to pay.[2]

¶ 4. In an April 2002 entry order, the district court granted partial summary judgment to Henry, concluding that under 21 V.S.A. § 624(e) Travelers had a right to reimbursement out of the UIM proceeds only to the extent that Henry had received a double recovery. The court explained that the question of whether Henry had received a double recovery could not be decided until all potential coverage had been determined and the nature and extent of Henry's damages had been considered. In its order, the court also granted Henry's request to join his personal automobile liability insurer as a party and add a counterclaim against both UIM carriers for the benefits allegedly due under the policies. The parties then stipulated, solely for the purpose of

---

[2] It appears from the record that Henry's entitlement to vocational rehabilitation and permanent disability benefits has not yet been determined as he has not yet reached a medical end result.

determining their respective rights with respect to the UIM proceeds, that Henry's "total damages" were the sum of the available UIM coverage ($500,000) and the total amount of workers' compensation benefits paid through the date of the court's final judgment order.[3]

¶ 5. In late 2003, the court granted judgment in Henry's favor, dismissing Travelers' complaint and awarding Henry $500,000 in UIM proceeds. The court found that the plain language of 21 V.S.A. § 624(e) protected two types of recoveries from the reimbursement rights of workers' compensation insurers: (1) payments from privately purchased plans (including UIM coverage) and (2) payments from any other first party plan. Because the UIM policy purchased on Henry's behalf by his employer was a first party insurance policy, the court concluded that Henry was not obligated to reimburse Travelers out of the UIM proceeds. Travelers appealed to the Second Circuit, which certified the questions at issue in this appeal.

¶ 6. We begin with an overview of the reimbursement statute. Generally speaking, 21 V.S.A. § 624 allows an injured employee to pursue a cause of action against a third party where the injury for which workers' compensation is payable "was caused under circumstances creating a legal liability to pay the resulting damages in some person other than the employer . . . ." *Id.* § 624(a). If an injured employee recovers damages from a liable third party, the employer or workers' compensation carrier is generally entitled to reimbursement for the workers' compensation benefits that it has paid. *Id.* § 624(e). Ideally, the statute operates to provide a fair result for all parties:

> [T]he insurance carrier, representing the employer, comes out even, being without fault or injury; the third party wrongdoer pays exactly the damages he would have paid without any workers' compensation law; the attorney is reimbursed for services rendered, and the employee — in addition to what he has already received in compensation benefits — is entitled to the remainder.

---

[3] As discussed in greater detail below, Travelers and Henry differ in their interpretation of the prohibition on "double recovery" found in 21 V.S.A. § 624(e). Travelers asserts that "double recovery" means a recovery from both the insurer and a third party for the same injury. Henry, in contrast, asserts that a "double recovery" does not occur until an employee has been "made whole," i.e., until his total recovery from all sources exceeds his "actual damages." Consistent with its position, Travelers maintained in the parties' stipulation that the question of Henry's "total damages" was irrelevant to the determination of the parties' rights and obligations under 21 V.S.A. § 624(e).

*St. Paul Fire & Marine Ins. Co. v. Surdam*, 156 Vt. 585, 590, 595 A.2d 264, 266 (1991) (quotation omitted); see also 6 A. Larson, Larson's Workers' Compensation Law § 110.02 (2004).

¶ 7. Prior to its amendment in 1999, 21 V.S.A. § 624(e) provided:

> In an action to enforce the liability of a third party, the injured employee may recover any amount which the employee or the employee's personal representative would be entitled to recover in a civil action. Any recovery against the third party for damages resulting from personal injuries or death only, after deducting expenses of recovery, shall first reimburse the employer or its workers' compensation insurance carrier for any amounts paid or payable under this chapter to date of recovery, and the balance shall forthwith be paid to the employee or the employee's dependents or personal representative and shall be treated as an advance payment by the employer on account of any future payment of compensation benefits.

In *Travelers Cos. v. Liberty Mutual Insurance Co.*, 164 Vt. 368, 372-73, 670 A.2d 827, 829-30 (1995), we interpreted this provision to allow a workers' compensation insurer to be reimbursed out of UM/UIM payments made to an employee by his employer's liability carrier after concluding that the employer's liability carrier was a "third party" within the meaning of 21 V.S.A. § 624(e) and UM/UIM payments constituted "damages."

¶ 8. Subsequent to our decision in *Travelers Cos.*, we held that a workers' compensation insurer was entitled to "first dollar" reimbursement from any recovery that an employee received from a third party, regardless of whether the recovery represented economic or noneconomic damages. *Brunet v. Liberty Mut. Ins. Group*, 165 Vt. 315, 317, 682 A.2d 487, 488 (1996). Our conclusion rested on the plain language of § 624(e), which allowed an insurer to be reimbursed out of "*any recovery*" that an employee received from a third party. *Id.* This rationale implicitly extended to an employee's recovery of UM/UIM benefits under a privately purchased insurance policy under our holding in *Travelers Cos.*, 164 Vt. at 373, 670 A.2d at 829-30.

¶ 9. Effective July 1, 1999, the Legislature amended 21 V.S.A. § 624(e) to include the following sentence:

> Reimbursement required under this subsection, except to prevent double recovery, shall not reduce the employee's recovery of any benefit or payment provided by a plan or policy

that was privately purchased by the injured employee, including uninsured-under insured motorist coverage, or any other first party insurance payments or benefits.

¶ 10. We are now asked to interpret the terms of the amended statute. Travelers argues that under § 624(e), as amended, it is still entitled to "first dollar" reimbursement from Henry's recovery of UIM benefits under his employer-purchased policy. According to Travelers, the 1999 amendment was enacted to protect an employee's recovery of UIM benefits under a privately-purchased policy, and it argues that there is no suggestion in either the plain language of the statute or its legislative history that the Legislature intended to protect UIM benefits recovered under an employer-purchased policy.

¶ 11. We disagree. In interpreting 21 V.S.A. § 624(e), our goal is "to discern and implement the intent of the Legislature." *Merkel v. Nationwide Ins. Co.*, 166 Vt. 311, 314, 693 A.2d 706, 707 (1997). If the Legislature's intent is clear from the plain meaning of the words used, we must enforce the statute according to its terms. *Tarrant v. Dep't of Taxes*, 169 Vt. 189, 197, 733 A.2d 733, 739 (1999). In this case, the Legislature's intent is clear from the plain language of the statute — an employee's recovery of UIM proceeds under an automobile liability policy purchased by his employer is a "first party insurance payment or benefit" that is not subject to the workers' compensation carrier's right to reimbursement except to prevent a double recovery.

¶ 12. The text of the statute is unambiguous — the phrase "privately purchased by the injured employee" does not modify the phrase "or any other first party insurance payments or benefits." The latter phrase is set off by a comma, and it stands independently of the "privately purchased" requirement. While Travelers asserts that this interpretation renders the "privately purchased" requirement meaningless, Travelers' proposed construction would disregard the latter portion of the statute. From the statute, as written, it is apparent that the Legislature sought to protect two types of payments — those made under privately-purchased plans (including UIM coverage) and those payments made to the employee under "any other first party" plan. Because the language of the statute is clear, we need not discuss Travelers' assertion that testimony received at a legislative hearing on the amendment supports a contrary construction. See *Cavanaugh v. Abbott Labs.*, 145 Vt. 516, 530, 496 A.2d 154, 162-63 (1985) (explaining that where statutory language is unambiguous, there is no need to review legislative history). We note that this testimony would be of

little weight in any event. See *State v. Madison*, 163 Vt. 360, 373, 658 A.2d 536, 545 (1995) ("[T]he remarks of a witness at a committee hearing are accorded little weight in determining the intent of the legislature in enacting a statute.").

¶ 13. Travelers maintains that, even accepting this interpretation of the statute, the UIM proceeds at issue here should be considered a "third-party recovery" subject to its first-dollar reimbursement right, and not a "first-party recovery" to which its right to reimbursement attaches only to prevent a double recovery. In support of this assertion, Travelers relies on *Travelers Cos.*, 164 Vt. at 372-73, 670 A.2d at 829, and *Colwell v. Allstate Insurance Co.*, 2003 VT 5, ¶¶ 25-26, 175 Vt. 61, 819 A.2d 727.

■ ¶ 14. We reject this argument because it disregards the plain language of the statute. The Legislature amended the statute to specifically exclude "first party insurance payments or benefits" from the carrier's right to first-dollar reimbursement. The UIM proceeds at issue here clearly fall within this category. Henry has a first-party claim as a covered insured under the automobile policy purchased by his employer. See, e.g., *Reese v. State Farm Mut. Auto. Ins. Co.*, 403 A.2d 1229, 1231-32 (Md. 1979) (explaining that uninsured motorist coverage reflects the defendant-insurer's direct promise to pay the insured-plaintiff under certain conditions). As the *Reese* court explained, "[b]ecause it is a promise by the insurer to pay its own insured, rather than a promise to its insured to pay some third party, the uninsured motorist coverage is in insurance parlance 'first party coverage' like collision, comprehensive, medical payments or personal injury protection, and not 'third party coverage' such as personal injury or property damage liability insurance." *Id.* As an insured under his employer's policy, Henry has a contractual right to receive benefits directly from his employer's insurer. It is Henry's direct right to claim UIM benefits, as an insured under the employer-purchased policy, that confers first-party status to him respecting such benefits. It is precisely this contractual relationship to UIM proceeds that the amended legislation addresses.

¶ 15. Neither *Travelers Cos.* nor *Colwell* support Travelers' assertion that Henry's UIM recovery should not be considered a "first party payment or benefit" under § 624(e). Our decision in *Travelers Cos.*, which held that UIM proceeds recovered under an employer-purchased liability policy fell within the reimbursement statute, preceded the Legislature's amendment of § 624(e), and it offers little support for Travelers' argument here. *Colwell* is equally unhelpful. In that case,

we considered whether a self-insured employer could be considered a "third party" subject to UIM liability under 21 V.S.A. § 624(a). 2003 VT 5, ¶ 25. We applied the dual capacity doctrine and held that the employer was responsible for paying both workers' compensation benefits and UIM benefits to the injured employee. Our recognition that an employer can be a third party under the statute does not support Travelers' assertion that an employee's claim against his employer's UIM policy must be characterized as a "third-party claim," and his recovery of proceeds from that policy must therefore be a "third-party recovery" to which Travelers' first-dollar reimbursement right attaches. This argument ignores the insurance contract that is the source of Travelers' obligation as well as the plain language of the amended statute. While the amount and scope of Henry's recovery may be characterized as a third-party recovery because it is defined by the tortfeasor's liability for Henry's damages, Henry's relationship by contract to the UIM insurer defines a first-party right. The UIM proceeds that Henry recovers under his employer's policy are plainly "first party benefits or payments" under the ordinary meaning of these terms. See *Brown v. Roadway Express, Inc.*, 169 Vt. 633, 634, 740 A.2d 352, 354 (1999) (mem.) ("We enforce the plain, ordinary meaning of language used by the Legislature.").

¶ 16. Travelers suggests that an employee's UIM recovery under a privately-purchased policy should be considered a "first-party payment or benefit," while a UIM recovery under an employer-purchased policy should not. The critical question is the source of the obligation. Having concluded above that § 624(e) protects first-party contract rights under both privately-purchased policies as well as employer-purchased policies, we find this argument without merit. The statute does not draw the distinction urged on us by Travelers, nor does Travelers offer any reason for distinguishing between these two types of recoveries that is not at odds with the plain meaning of the statute. We therefore reject Travelers' assertion that UIM benefits recovered under an employer-purchased policy are not "first party insurance payments or benefits" under 21 V.S.A. § 624(e).

¶ 17. We turn next to Travelers' assertion that its right to a credit against the balance of an employee's third-party recovery for any future benefits owed was not affected by the amendment to § 624(e). According to Travelers, the plain language of the statute and its legislative history do not indicate that the Legislature contemplated impairing its right to a future credit. In support of this assertion, Travelers argues that the phrase "except to prevent double recovery"

applies only to "reimbursement" required under § 624(e), and its right to a credit does not constitute reimbursement. Travelers thus argues that the district court erred in dismissing its complaint and awarding Henry $500,000 in damages free and clear of its right under § 624(e) to treat those monies as an advance payment or credit against future workers' compensation benefits.[4]

¶ 18. Travelers essentially reiterates its assertion that it is entitled to first-dollar reimbursement, in this case, from the balance of an employee's UIM recovery. We reject this argument, which is at odds with a reasonable interpretation of § 624(e). We can discern no policy reason why the Legislature would distinguish between a carrier's right to reimbursement for the workers' compensation benefits paid and its corollary right to a credit against the balance of the third-party recovery for future benefits owed. The two are distinguished only by the date on which an injured employee obtains a third-party recovery. Economically, they are the same thing. To say that the term reimbursement does not include an offset for future benefits owed is to draw an artificial distinction, and we reject Travelers' narrow interpretation of the term. Travelers' right to an offset against the balance of Henry's UIM proceeds for future benefits owed, like its right to recoup benefits paid, exists only to the extent necessary to prevent a double recovery.

¶ 19. To determine Travelers' rights under the statute, we must therefore address the meaning of the phrase "except to prevent double recovery." The federal district court awarded Henry $500,000 in UIM proceeds, free of Travelers' right to reimbursement and its right to an offset against the balance of such proceeds for future benefits owed. Although it is not clear from the district court's opinion, it appears that the court construed the phrase "double recovery" to mean a recovery by the employee that exceeds his "total damages." Because the parties in this case stipulated that Henry's "total damages" were the sum of the available UIM coverage ($500,000) and the total amount of work-

---

[4] Henry asserts that we should decline to address what effect, if any, the amendment to 21 V.S.A. § 624(e) has on Travelers' right to a credit against Henry's recovery for any future benefits owed. According to Henry, there can be no justiciable issue as to Travelers' right to a credit unless and until he recovers UIM proceeds. Henry also asserts that the Court should leave the resolution of this question in the first instance to the Commissioner of Labor and Industry. We reject these arguments. Given the plain language of the statute, and because this issue is plainly implicated by the facts of this case, we find it expeditious to address the argument here.

ers' compensation benefits paid through the date of the court's final judgment order, the court presumably concluded that Travelers did not have any right to Henry's UIM proceeds.

¶ 20. Travelers argues that the federal district court erred in interpreting the words "double recovery." According to Travelers, "double recovery" must be construed to mean a recovery from both the insurer and a third party for the same injury. See *Surdam*, 156 Vt. at 590, 595 A.2d at 266 ("When a third party is found responsible in a personal injury action for damages suffered by the worker, the worker is not permitted double recovery from both the insurer and third party for the same injury."). In other words, Travelers reiterates its assertion that it is entitled to a "first dollar" reimbursement right from Henry's UIM recovery under his employer-purchased policy. Travelers argues that this is the only interpretation that will implement the policy underlying the reimbursement statute, i.e., the prevention of a double recovery.

¶ 21. We reject Travelers' interpretation because it would render the 1999 amendment a nullity. Under Travelers' proposed interpretation, the result would be the same under both the pre-amendment and post-amendment versions of the statute — Travelers would be entitled to first-dollar reimbursement from an employee's UIM recovery. We must presume that, by amending the statute, the Legislature intended to change the law. *State v. Yorkey*, 163 Vt. 355, 358, 657 A.2d 1079, 1080 (1995) ("[T]here is a presumption that the Legislature does not intend to enact meaningless legislation."). Thus, we must construe 21 V.S.A. § 624(e) in a way that will not render the amendment "ineffective or meaningless." *Id.*

¶ 22. We conclude that by amending the statute the Legislature intended to change the result reached in *Travelers Cos.* and *Brunet*, and protect an employee's UIM recovery from a workers' compensation carrier's right to "first dollar" reimbursement. The Legislature remained mindful of the need to prevent a double recovery, however, and this makes salient an inquiry into the nature of the damages recovered under first-party insurance policies. On this point, we find our reasoning in *Surdam*, 156 Vt. at 590, 595 A.2d at 266, instructive. In *Surdam*, we drew a distinction between economic and noneconomic damages in considering an injured employee's obligation to reimburse a workers' compensation carrier under § 624(e). See *id.* at 590-91, 595 A.2d at 266-67. We concluded that a workers' compensation carrier was not entitled to reimbursement from an employee's third-party recovery, where the recovery, under New York law, represented solely

noneconomic damages. *Id.* We stated that allowing the insurance carrier to be reimbursed out of such damages would saddle the injured employee with a "double debit," as opposed to a "double recovery." *Id.* at 589, 595 A.2d at 266 (quotations omitted). As we explained, "[t]he Vermont Legislature could not have intended that an injured employee must lose a noneconomic recovery to pay back economic damages received from a workers' compensation carrier." *Id.* at 590, 595 A.2d at 266.

¶ 23. We rejected this approach in 1996 in *Brunet*, 165 Vt. at 317, 682 A.2d at 488, concluding that under the plain language of § 624(e), a workers' compensation carrier was entitled to first-dollar reimbursement from "any recovery" in a third-party suit. "Double recovery," however, is distinct from "any recovery." In light of the Legislature's amendment to § 624(e), in which this language is used, we find the approach used in *Surdam*, distinguishing between economic and noneconomic damages, persuasive in the context of an employee's recovery of UIM benefits. The plain meaning of the amended statute indicates the Legislature's intent to protect an employee's UIM benefits to the extent that it does not represent a double recovery. Drawing a distinction between economic and noneconomic damages pays heed to the unique character of UIM benefits while remaining consistent with the general concept of preventing a double recovery present in § 624(e).

¶ 24. Therefore, when an injured employee recovers damages under an employer-purchased insurance policy, or any other first-party insurance policy, the settling parties, or the trial court, must apportion the award between economic and noneconomic damages. Workers' compensation benefits reflect an employee's economic losses. See *Surdam*, 156 Vt. at 589-90, 595 A.2d at 266 ("Workers' compensation law provides injured workers with expeditious and certain payments for economic losses without proof of fault and employers with limited liability."); see also 1 A. Larson, Larson's Workers' Compensation Law § 1.03[4] (2004) ("In compensation, unlike tort, the only injuries compensated for are those which either actually or presumptively produce disability and thereby presumably affect earning power."). Using the type of benefits provided by workers' compensation as a guide, we conclude that the economic damages recoverable by the workers' compensation insurer include those awarded for lost wages, diminished earning capacity, medical expenses, vocational rehabilitative services, and in the case of the employee's death, burial and funeral expenses, and wage replacement paid to a surviving

spouse, dependent children, or other dependents. See generally 21 V.S.A. §§ 601-711. If the employee recovers such damages and has already been compensated for these losses by the insurer, the insurer is entitled to reimbursement to prevent a double recovery. All other damages that the employee recovers under a first-party insurance policy, including compensation for pain and suffering and other related nonmonetary injuries, are considered noneconomic damages. Because workers' compensation does not compensate an employee for such losses, there is no danger of a double recovery, and the insurer is not entitled to reimbursement from this portion of the employee's award.

¶ 25. We recognize that an injured employee and a UIM carrier could attempt to structure a settlement agreement so as to avoid reimbursing the employer or the workers' compensation insurer for the benefits that it has provided. See, e.g., *Colo. Comp. Ins. Auth. v. Jorgensen*, 992 P.2d 1156, 1166 (Colo. 2000) (en banc) (holding that employee may not attempt to circumvent legitimate subrogation rights of insurer without risking that apportionment between economic and noneconomic damages will be set aside). Section 624 provides some protection against such a result. See 21 V.S.A. § 624(a) (employee must notify workers' compensation insurance carrier of action against liable third party; any party in interest shall have a right to join in suit); *id.* § 624(b) (consent of employer or workers' compensation insurer required if employee seeks to settle claim against third party for less than compensation benefits that would have been payable in the future); *id.* § 624(c) (settlement and release by employee not a bar to action by employer or its insurance carrier to proceed against third party for any interest or claim that it might have). As an additional safeguard, the employer, or workers' compensation carrier, has a right to seek judicial review of such a settlement agreement to ensure that the apportionment of damages is fair and that it reasonably reflects the injured party's actual economic and noneconomic losses. See *Jorgensen*, 992 P.2d at 1166; see also *Dearing v. Perry*, 499 N.E.2d 268, 272 (Ind. Ct. App. 1986) (invalidating provision in settlement agreement allocating reimbursable and nonreimbursable damages where workers' compensation carrier had no opportunity to participate in settlement; carrier is entitled to decision on allocation by impartial factfinder). The parties must have an opportunity to present evidence on the proper allocation of the injured employee's economic and noneconomic losses. *Jorgensen*, 992 P.2d at 1166; *Dearing*, 499 N.E.2d at 272.

¶ 26. It is unclear from the record in this case what portion of Henry's UIM recovery can be attributed to economic damages. The resolution of Travelers' claim to reimbursement, as well as its claim to a credit against the balance of Henry's UIM recovery, must therefore await a determination as to the nature and extent of Henry's damages.

*The reformulated certified question is answered as follows: a workers' compensation carrier has no right to reimbursement from, nor a future credit against, UIM proceeds that an employee recovers under an employer-purchased automobile liability policy, except to prevent a double recovery. To determine whether a double recovery has occurred, the nature and extent of an injured employee's damages must first be determined. The employee must then reimburse the workers' compensation carrier out of the economic damages portion of his UIM award.*