2007 VT 86

# Progressive Casualty Insurance Company v. Estate of Shaun P. Keenan, Daniel Keenan, Shawn Macomber, Christopher Potter, Carlos Dobbins, Ryan Monroe and York Insurance Company of Maine, Inc.

[937 A.2d 630]

No. 06-130

Present: Reiber, C.J., Dooley, Johnson and Skoglund, JJ., and Allen, C.J. (Ret.), Specially Assigned

Opinion Filed August 31, 2007

*Stephen D. Ellis* of *Ellis & Boxer, Springfield,* for Defendant-Appellant York Insurance Company.

*Donald W. Goodrich* of *Donovan & O'Connor, LLP,* Bennington, for Defendants-Appellees Keenan.

*D. Patrick Winburn* of *Winburn Law Offices,* Bennington, for Defendant-Appellee Monroe.

¶ 1. **Reiber, C.J.** In this appeal, we revisit the meaning of the term "double recovery" as used in 21 V.S.A. § 624(e) and interpreted by the Court in *Travelers Insurance Co. v. Henry,* 2005 VT 68, 178 Vt. 287, 882 A.2d 1133. Specifically, we address the circumstances under which an underinsured/uninsured motorist (UIM) award must be allocated between economic and noneconomic damages and, consequently, when a workers' compensation insurer has the right to reimbursement from the economic damages portion of such an award. As discussed below, we hold that, consistent with *Henry, all* first-party awards must be allocated between economic and noneconomic damages. To prevent a double recovery, the workers' compensation insurer has the right to reimbursement out of the economic damages portion of the award, and the employee retains the portion of the award that represents noneconomic damages. Because no such allocation

occurred in this case, we reverse and remand for further proceedings.

¶ 2. The relevant facts are undisputed. In June 2003, Ryan Monroe and five other employees of Four Seasons Roofing were seriously injured in an automobile accident caused by another driver. Because the accident occurred during the course of their employment, the employees received benefits from their employer's workers' compensation insurer, York Insurance Company of Maine, Inc. The employees also recovered $50,000 in damages from the insurance company of the individual who caused the accident. By agreement, one-third of this award was allocated to York as partial reimbursement for the workers' compensation benefits paid, and the remaining portion was divided equally among the six employees.

¶ 3. Four Seasons Roofing also held a UIM policy with Progressive Casualty Insurance Company under which the six employees were first-party insureds. Progressive paid the limits of its policy ($450,000) into the trial court, and it filed the instant interpleader action to determine the priority of claims against this fund. York and the six employees disagreed over the distribution of the fund. Following mediation, the employees agreed to an equal distribution ($75,000 each) among themselves, leaving York's claims for reimbursement unresolved. Eventually, York settled with each employee except Mr. Monroe.

¶ 4. In late 2005 and early 2006, the parties filed cross-motions for summary judgment regarding York's right to reimbursement. Each interpreted 21 V.S.A. § 624(e) and our decision in *Henry* differently. Mr. Monroe argued that he was entitled to first-dollar priority on the UIM proceeds until he was "made whole" for his noneconomic losses. Until this point was reached, he asserted, there could be no "double recovery" and, consequently, no obligation to reimburse the workers' compensation insurer under § 624(e). Because it was undisputed that his noneconomic damages greatly exceeded his share of the UIM award, he maintained that no reimbursement was required.

¶ 5. For its part, York asserted that Mr. Monroe could not allocate all of his UIM award to noneconomic damages and thereby defeat its right to reimbursement. Rather, as an initial matter, the award must be apportioned fairly between economic and noneconomic damages, with York's statutory right to reimbursement attaching to the economic damages portion. The supe-

rior court agreed with Mr. Monroe's interpretation of § 624(e), and it granted summary judgment in his favor. York appeals.

¶ 6. This case presents a legal question, which we review de novo. *Charbonneau v. Gorczyk*, 2003 VT 105, ¶ 2, 176 Vt. 140, 838 A.2d 117. As discussed below, we agree with York that the trial court's construction of § 624(e) is inconsistent with our decision in *Henry*.

¶ 7. In *Henry*, we recognized that as a general rule under our statute a workers' compensation insurer is entitled to "first-dollar reimbursement" from an injured employee's recovery of damages from a third party, regardless of whether this recovery represents economic or noneconomic damages and regardless of whether the employee has been "made whole." 2005 VT 68, ¶¶ 6, 8; see also 21 V.S.A. § 624(e) (employer or workers' compensation insurer entitled to first-dollar reimbursement from "[a]ny recovery" made by injured employee against a third party for damages, after deducting expenses of recovery, with exception discussed below).

¶ 8. In 1999, however, the Legislature amended § 624(e) to afford special treatment to an employee's recovery of "first party" payments or benefits. Specifically, the amendment stated: "Reimbursement required under this subsection, except to prevent double recovery, shall not reduce the employee's recovery of any benefit or payment provided by a plan or policy that was privately purchased by the injured employee, including uninsured-under insured motorist coverage, or any other first party insurance payments or benefits." 21 V.S.A. § 624(e). We concluded that this language changed the general rule cited above, thereby protecting an employee's recovery of first-party insurance payments or other benefits from the insurer's right to first-dollar reimbursement. *Henry*, 2005 VT 68, ¶¶ 18-19. We did not hold, however, that the injured employee was therefore entitled to exempt such recoveries from the reimbursement obligation, nor did we conclude that an employee was entitled to be "made whole" before a double recovery could occur. See *Henry*, 2005 VT 68, ¶¶ 23-24.

¶ 9. Rather, as stated above, we held that to prevent a "double recovery" within the meaning of 21 V.S.A. § 624(e), first-party insurance awards *must* be apportioned between economic and noneconomic damages, with the insurer having a right to reimbursement out of the economic damages portion. *Id.*; see

also *Travelers Ins. Co. v. Henry*, 470 F.3d 56, 62 (2d Cir. 2006) (recognizing that Vermont Supreme Court in *Henry* adopted a "two-step approach" to reimbursement, which requires a trial court (or settling parties) to apportion any recovery under a UIM policy between economic and noneconomic damages). Double recovery occurs when the employee recovers economic damages from two sources, including first-party sources, and thus, the insurer has a right to reimbursement out of the portion of the first-party award that is equal to the proportion of the injured employee's total economic loss to the total damages sustained. See *Henry*, 2005 VT 68, ¶¶ 23-24.

█ ¶ 10. We specifically recognized the possibility that an employee and UIM carrier could attempt to structure a settlement agreement that would prevent the insurer from exercising its right to reimbursement. *Id.* ¶ 25. For this reason, we held that, in addition to other safeguards, the insurer has a right to seek judicial review of settlement agreements to ensure that the apportionment of damages was fair and that it fairly reflected the injured party's actual economic and noneconomic losses. *Id.* To be fair and reasonable within the meaning of *Henry*, a UIM award must be apportioned according to the same ratio that an employee's overall economic damages have to his overall noneconomic damages.

¶ 11. Allocating an entire UIM award to noneconomic damages is inconsistent with this approach. Such an allocation does not fairly reflect the injured party's actual economic and noneconomic losses, and it is not fair or reasonable from the perspective of the workers' compensation insurer. While an employee certainly has a persuasive claim that he or she should be "made whole" first out of such awards, so too does the workers' compensation insurer, which has been paying workers' compensation benefits despite the fact that someone other than the employer bears the "legal liability" for the damages resulting from the employee's injury. See 21 V.S.A. § 624(a) (reimbursement statute applies only in cases where injury "was caused under circumstances creating a legal liability to pay the resulting damages in some person other than the employer"). In cases where an employee has incurred significant noneconomic damages, the employee will also likely have incurred significant economic damages, and it is likely that, taken together, both types of damages will greatly exceed a UIM award.

■ ¶ 12. Our approach in *Henry* recognizes these competing interests and attempts to balance them. It gives both the insurer and the employee a right to a portion of the first-party proceeds, and holds in essence that the "first dollar" of such awards should be shared between them. Because a fair apportionment between economic and noneconomic damages is required under *Henry* and did not occur in this case, we reverse and remand for further proceedings.

¶ 13. Although the dissent acknowledges our decision in *Henry*, it nonetheless attempts to interpret § 624(e) anew. In doing so, it relies heavily on a decision by the United States Court of Appeals for the Second Circuit, *Travelers Insurance Co. v. Carpenter*, 411 F.3d 323 (2d Cir. 2005), which preceded our decision in *Henry*. See *post*, ¶¶ 24-27, 37. It also cites a workers' compensation treatise, as well as comments made by several lobbyists and legislators in connection with the statutory amendment at issue. *Post*, ¶¶ 25-27. Based on these sources, the dissent concludes that the Legislature plainly intended to allow injured employees to retain UIM awards until they are "made whole" for their non-economic losses. *Post*, ¶ 37.

■ ¶ 14. Whatever the value of the sources cited by the dissent, they do not change the fact that this Court already adopted a different interpretation of § 624(e) in *Henry*. As discussed above, *Henry* did not make proration optional. Rather, it requires apportionment in every case to prevent a double recovery. Indeed, the Second Circuit — in *Travelers Insurance Co. v. Henry*, 470 F.3d at 62 — acknowledged that its earlier decision in *Carpenter* was superseded by ours in *Henry*, and it recognized that, under our *Henry* holding, the first step in the reimbursement process is apportioning a UIM award between economic and noneconomic damages. *Id.* Our interpretation of § 624(e) in *Henry* plainly controls this case, and pursuant to the doctrine of stare decisis, it must be applied here. See, e.g., *Coyle v. Coyle*, 2007 VT 21, ¶ 7, 181 Vt. 583, 925 A.2d 996 (mem.) (rejecting suggestion that Court revisit its interpretation of certain statute, and stating that where certain understanding of statute had been established by recent, earlier decision, doctrine of stare decisis was controlling).

*Reversed and remanded.*

¶ 15. **Skoglund, J.**, dissenting. Neither the Legislature nor this Court in *Travelers Insurance Co. v. Henry*, 2005 VT 68, 178 Vt.

287, 882 A.2d 1133, intended to create a scheme that divides UIM benefits between an injured employee and the workers' compensation carrier when the injured employee's retention of the entire award would not result in a double recovery of benefits for the same type of injury. Indeed, the Legislature specifically amended our workers' compensation law to overrule this Court's prior holdings that gave workers' compensation carriers first-dollar recovery of an injured worker's UIM benefits when a stranger to the employment relationship was at fault for the worker's injuries. Because I find no support in our workers' compensation statute or our case law for the majority's narrow interpretation of the term "double recovery" or its proration approach for dividing UIM benefits, I respectfully dissent.

¶ 16. Ryan Monroe was one of six men heading home from work in their employer's van when another vehicle crossed the center line and struck the van at a high rate of speed. One of the six occupants of the van died, and the other five, including plaintiff, were severely injured. As the employer's workers' compensation insurance carrier, York Insurance Company of Maine, Inc., provided coverage for the injured employees' economic damages, but not any of their significant noneconomic damages. After dividing the operator's minimal policy funds, the injured workers seek UIM coverage under a motor vehicle policy issued to their employer by Progressive Casualty Insurance Company. York claims that the statute entitles it to "first-dollar" recovery from the percentage of the UIM award representing the proportion of economic damages in relation to total damages. Monroe (and other claimants who were still in the case at that time) contend that York is not entitled to any of the UIM proceeds because each of the individual claimant's noneconomic damages far exceeded their portion of the UIM award. Thus, according to claimants, there was no double recovery that would justify reimbursing York for funds paid for their economic damages. The superior court agreed with claimants.

¶ 17. Everyone agrees that, as the result of the 1999 amendment to 21 V.S.A. § 624(e), a workers' compensation carrier that has paid benefits to an injured employee to compensate the employee for economic damages such as lost wages or medical expenses may not obtain reimbursement from a UIM award available to the employee through the employee or employer's liability policy, *"except to prevent double recovery."* (Emphasis

added.) In this appeal, we must determine what the Legislature meant by the term "double recovery" in § 624(e) and whether the Legislature or this Court in *Henry* intended to entitle workers' compensation carriers to be reimbursed from an employee's UIM award in a ratio equal to the ratio of the employee's economic damages to total damages, irrespective of whether the employee's noneconomic damages exceeded the UIM award.

¶ 18. After examining the language and legislative history of § 624(e), as well as *Henry* and other relevant case law, I am convinced that the majority's narrow interpretation of the term "double recovery" is contrary to legislative intent and that we did not intend *Henry* to impose the mandatory apportionment scheme adopted by the majority today. I would hold that a workers' compensation carrier that has paid benefits to an injured employee for economic losses is not entitled to reimbursement from an injured employee's UIM award if the employee's noneconomic damages exceed the amount of the award. In such a situation, there is no double recovery because workers' compensation benefits apply only to economic losses.

¶ 19. A brief history of the relevant statutes and case law is necessary to demonstrate why the majority's interpretation of § 624(e) and *Henry* is erroneous. As the superior court stated, the issues presented in this case concern the evolution of the social compact created by our workers' compensation law, which was intended to offset potentially catastrophic consequences of work-related injuries and, at the same time, to limit the reach of the employer's liability. Before 1959, acceptance of workers' compensation benefits barred an injured employee from recovering damages in any other suit; however, commencing with the 1959 amendment to the workers' compensation statute, employees eligible to receive workers' compensation benefits were permitted to pursue additional common-law recoveries against third parties responsible for their injuries. *Dubie v. Cass-Warner Corp.*, 125 Vt. 476, 478, 218 A.2d 694, 696 (1966). The language from that amendment is essentially the same language now set forth in the first two sentences of the current version of § 624(e):

> In an action to enforce the liability of a third party, the injured employee may recover any amount which the employee or the employee's personal representative would be entitled to recover in a civil action. Any

recovery against the third party for damages resulting from personal injuries or death only, after deducting expenses of recovery, shall first reimburse the employer or its workers' compensation insurance carrier for any amounts paid or payable under this chapter to date of recovery, and the balance shall forthwith be paid to the employee or the employee's dependents or personal representative and shall be treated as an advance payment by the employer on account of any future payment of compensation benefits.

This language allows the injured employee to recover against a responsible third party, but entitles the workers' compensation carrier to "first-dollar" reimbursement from any benefits paid for the same injury. The purpose of the amendment was "to save the injured workman's common law action, subject only to the employer's subrogation for compensation previously awarded." *Dubie*, 125 Vt. at 479, 218 A.2d at 696.

¶ 20. With the enactment of 23 V.S.A. § 941 in 1968, the Legislature required insurers to provide coverage for damages caused by uninsured or unknown motorists. Since 1981, § 941 has provided matching UIM protection up to the amount that a motorist acquires to insure against the motorist's own liability. We addressed the interaction between § 624(e) and § 941 in *Travelers Cos. v. Liberty Mutual Insurance Co.*, 164 Vt. 368, 670 A.2d 827 (1995). Reasoning that a third party is any party that is not the workers' compensation carrier, the injured worker, or the injured worker's employer, we held "that a workers' compensation insurer who has paid out benefits is entitled to reimbursement from UM/UIM payments made by an employer's liability carrier." *Id.* at 373, 670 A.2d at 829. The following year, in *Brunet v. Liberty Mutual Insurance Group*, we held further that where a worker could recover both economic and noneconomic damages from a third party, the plain language of § 624(e) allowed the workers' compensation carrier to "recoup its compensation award from *any* recovery obtained in a third-party suit." 165 Vt. 315, 317, 682 A.2d 487, 488 (1996). These two cases held that a workers' compensation carrier is entitled to (1) subrogation against an injured employee's benefits obtained from the employee's or employer's UIM coverage just as if the employee had received payments from a third party and (2) first-dollar recovery irrespective of the proportion of economic to noneconomic damages.

¶ 21. As we recognized in *Henry*, however, the Legislature enacted an amendment to § 624(e) in 1999 that effectively overruled our decisions in *Travelers Cos.* and *Brunet.* See 2005 VT 68, ¶ 22. We concluded "that by amending the statute the Legislature intended to change the result reached in *Travelers Cos.* and *Brunet*, and protect an employee's UIM recovery from a workers' compensation carrier's right to 'first dollar' reimbursement." *Id.* The Legislature did so by adding a third sentence to 21 V.S.A. § 624(e):

> Reimbursement required under this subsection, except to prevent double recovery, shall not reduce the employee's recovery of any benefit or payment provided by a plan or policy that was privately purchased by the injured employee, including uninsured-under insured motorist coverage, or any other first-party insurance payments or benefits.

¶ 22. This is the statutory language at issue in this appeal. The amendment plainly categorizes UIM benefits as first-party benefits that "shall not" be reduced through reimbursement to the workers' compensation carrier, "except to prevent double recovery." The amendment does not set forth any scheme to apportion UIM benefits according to the ratio of noneconomic damages to overall damages. Rather, the statute now flatly provides that the employee is entitled to UIM benefits as first-party benefits, and that workers' compensation carriers may not reduce the employee's recovery of those benefits through reimbursement except to prevent double recovery. The term "double recovery" presumably refers to economic damages — the only type of damages paid by workers' compensation carriers.

¶ 23. In *Henry*, we reiterated that the 1999 amendment to § 624(e) precisely addressed the insured's contractual right under his employer's liability policy "to receive [UIM] benefits directly from his employer's insurer." 2005 VT 68, ¶ 14 ("It is Henry's direct right to claim UIM benefits, as an insured under the employer-purchased policy, that confers first-party status to him respecting such benefits."). As we stated in *Henry*, "the Legislature's intent is clear from the plain language of the statute — an employee's recovery of UIM proceeds under an automobile liability policy purchased by his employer is a 'first party insurance payment or benefit' that is not subject to the workers' compen-

sation carrier's right to reimbursement except to prevent a double recovery." *Id.* ¶ 11. In short, UIM benefits are first-party benefits to which the injured employee is entitled, even if the liability policy providing the UIM benefits was purchased by the employer rather than the employee. Given the plain statements of both the Legislature and this Court that injured employees are entitled UIM benefits as first-party proceeds, I fail to grasp the majority's reasoning that workers' compensation carriers should be "made whole" because they have been paying benefits even though a third party is legally liable for the employee's injury. *Ante*, ¶ 11.

¶ 24. The remaining question, then, is what constitutes a double recovery. In *Henry*, we construed the 1999 amendment to answer a question certified to us from the United States Second Circuit Court of Appeals, but did not explicitly define the meaning of the term "double recovery." As the superior court noted, although we explicitly rejected the insurer's argument that the term "double recovery" means a recovery from both the workers' compensation carrier and another party for the same injury, we only obliquely addressed, without deciding, the injured employee's argument there is no double recovery until an employee has been made whole. See *Henry*, 2005 VT 68, ¶¶ 13-14.

¶ 25. The Second Circuit, however, did directly address the meaning of the term "double recovery" in § 624(e) in a decision that was issued four days before this Court issued *Henry*. *Travelers Ins. Co. v. Carpenter*, 411 F.3d 323 (2d Cir. 2005). After examining the legislative history of the 1999 amendment to § 624(e) and the treatment of the meaning of the term "double recovery" in the leading treatise on workers' compensation, the court in *Carpenter* held that "under § 624(e) as amended in 1999, the insurer has no right to reimbursement unless and until the injured worker has received compensation in excess of the total damages sustained." *Id.* at 324-25.

¶ 26. Regarding the 1999 amendment's legislative history, the Second Circuit noted that an insurance representative argued in opposition to the amendment and that "[t]he proponent of the amendment was the AFL-CIO, which represented it as legislation intended to reverse the Vermont Supreme Court's decision in *Travelers Cos.*" *Id.* at 336. At a committee hearing on the amendment, a key supporter of the bill "testified that the amendment was intended to allow an injured worker to be made whole from his or her own UIM insurance instead of using the proceeds

of that insurance to reimburse the workers' compensation insurance carrier." *Id.* Following statements from lobbyists, one of the senators on the committee argued in favor of the amendment because it was fair to make the injured employee whole. *Id.* at 337. The chief sponsor of the amendment from the Senate agreed that it was justified because injured employees should be entitled to collect on UIM benefits for which they have paid. *Id.* The Legislature ultimately passed the amendment in essentially the same form as presented to the committee. *Id.* Thus, as the Second Circuit found, the legislative history strongly suggests that the 1999 amendment was intended to allow injured workers to retain UIM benefits and to preclude workers' compensation insurers from being reimbursed from such benefits to the extent that an injured worker had not been made whole.

¶ 27. The court in *Carpenter* also reviewed the leading treatise on workers' compensation law, which states that "double recovery" can mean either (1) " 'recovering from two sources a combined amount that is greater than the plaintiff's actual total damages' " — referred to as actual double recovery, or (2) " 'getting recoveries from two sources, whether or not the aggregate amount equals or exceeds actual damages' " — referred to as double source recovery. *Id.* at 334 (quoting 6 A. Larson, Larson's Workers' Compensation Law § 110.05[8], at 110-23 (2004)). As the court noted, the Larson treatise concludes "that an insurer's right to reimbursement of UIM proceeds should be subject to a limitation on 'double recovery' only in the sense of recovery of more than the total damages sustained." *Id.* at 335 (citing 6 Larson's Workers' Compensation Law § 110.05[8]); see M. Kolter, *And the Lion Shall Lay Down With the Lamb: Third-Party Actions Under Vermont Workers' Compensation Law*, 28 Vt. B.J. 30, 33 (2002) ("The plain language of Section 624(e) provides that if there is no double recovery, the employee is entitled to keep *all* of the proceeds from insurance policies he or she purchased, without reimbursement to the employer or carrier.").

¶ 28. The underlying policy basis for this conclusion is the "elementary" notion that "the central purpose of [workers' compensation and UIM statutes] is protection of the injured person." 6 Larson's Workers' Compensation Law § 110.05[8], at 110-22. As the Larson treatise explains:

> We are now ready to ask: is the second sort of double recovery [double source recovery] obnoxious to the poli-

cies of compensation acts or uninsured motorist acts, or to public policy in general? The question almost answers itself. *There can be no conceivable policy objection to allowing an injured person to retain two recoveries that, when combined, still do not make him or her whole.*

*Id.* at 110-23 (emphasis added).

¶ 29. In *Henry*, we neither examined the legislative history to the 1999 amendment nor consulted the leading treatise on the subject, but we explicitly rejected the insurer's argument advocating double source recovery, stating that such an interpretation "would render the 1999 amendment a nullity." 2005 VT 68, ¶ 21. Instead, we concluded that "[t]he question of whether an employee has received a double recovery can be answered only after the nature and extent of the injured employee's damages has been determined." *Id.* ¶ 1. In arriving at this latter conclusion, we reasoned that although the 1999 amendment was plainly intended to "change the result" in *Travelers Cos.* and *Brunet* and "protect an employee's UIM recovery from a workers' compensation carrier's right to 'first-dollar' reimbursement," the Legislature also intended to prevent double recoveries, thereby requiring "an inquiry into the nature of the damages recovered under first-party insurance policies." *Id.* ¶ 22.

¶ 30. To address the question of what constitutes a double recovery, we revived a previously applied but later rejected approach that distinguished between economic and noneconomic damages. See *id.* ¶¶ 22-24 (discussing *St. Paul Fire & Marine Ins. Co. v. Surdam*, 156 Vt. 585, 589-90, 595 A.2d 264, 266 (1991)). In *Surdam*, we concluded that a workers' compensation carrier that had paid benefits to an injured employee was not entitled to reimbursement from monies obtained by the employee in a personal injury action against a third party in New York state because (1) New York law limited an employee's recovery from a third party to only noneconomic damages, and (2) workers' compensation benefits compensate employees for only economic damages. 156 Vt. at 587-88, 595 A.2d at 265. In so holding, we reasoned that "[t]he Vermont Legislature could not have intended that an injured employee must lose a noneconomic recovery to pay back economic damages received from a workers' compensation carrier." *Id.* at 590, 595 A.2d at 266.

¶ 31. We declined to extend the reasoning of *Surdam* in *Brunet*, noting that Vermont, unlike New York, does not limit injured

employees to noneconomic damages in third-party suits. Instead, we held that "the workers' compensation carrier may recoup its compensation award from any recovery obtained in a third-party suit." *Brunet*, 165 Vt. at 317, 682 A.2d at 488. Nevertheless, as indicated above, the Legislature intended the 1999 amendment to § 624(e) to negate our decision in *Brunet*. Moreover, we explicitly found the *Surdam* approach distinguishing between economic and noneconomic damages to be "persuasive in the context of an employee's recovery of UIM benefits" because "[t]he plain meaning of the amended statute indicates the Legislature's intent to protect an employee's UIM benefits to the extent that it does not represent a double recovery." *Henry*, 2005 VT 68, ¶ 23.

¶ 32. Hence, for the purpose of assuring against a double recovery, we concluded in *Henry* that

> when an injured party recovers damages under an employer-purchased insurance policy, or any other first-party insurance policy, the settling parties, or the trial court, must apportion the award between economic and noneconomic damages. . . . If the employee recovers [economic] damages and has already been compensated for these losses by the insurer, the insurer is entitled to reimbursement to prevent a double recovery.

*Id.* ¶ 24. We reasoned that, because our workers' compensation law does not compensate an employee for noneconomic losses, "there is no danger of a double recovery [for such losses], and the insurer is not entitled to reimbursement from this portion of the employee's award." *Id.*

¶ 33. Focusing on these statements, the majority apparently concludes that *Henry* required the apportionment of UIM benefits according to the ratio of the employee's economic damages to total damages in all cases — even if the injured employee's noneconomic damages exceed the UIM award — and that the workers' compensation carrier is entitled to first-dollar reimbursement of the economic damages portion of the award. I disagree. *Henry* neither requires apportionment of UIM awards in all instances nor creates a proration system that reimburses the workers' compensation carrier from a portion of first-party UIM awards when the injured employee's noneconomic damages exceed the entire UIM award.

¶ 34. As the superior court recognized, a remand was necessary in *Henry* because of our uncertainty regarding the limitations of

the stipulation in that case. The parties had stipulated that, for the purpose of determining their respective rights to the UIM proceeds, Henry's total damages equaled the sum of the UIM award and the total amount of workers' compensation benefits paid through the date of the court's final judgment order. Because the record did not show any breakdown between the claimant's economic and noneconomic damages, this Court understandably was not willing to speculate as to what that breakdown might be and how it might effect reimbursement for economic losses paid by the workers' compensation carrier.

¶ 35. To be sure, in *Henry* we emphasized the importance of distinguishing between the economic and noneconomic damage component of UIM awards, and we required the settling parties or trial court to apportion an award between such types of damages for the purpose of preventing double recovery. But apportioning a UIM award into economic and noneconomic damages is necessary only if the award arguably exceeds the injured employee's noneconomic damages, in which case there is the potential for double recovery. Because the parties' stipulation had not specified the nature of the damages and had indicated that the total damages were the sum of the UIM coverage plus the total amount of workers' compensation benefits paid through the date of the final judgment order, a remand was necessary so that the trial court could determine what portion of the injured employee's recovery should be attributable to economic damages. *Id.* ¶¶ 19, 26.

¶ 36. Here, the parties agree that Monroe's noneconomic damages far exceeded the total UIM award. The trial court found that each individual claimant's noneconomic damages "greatly" exceeded the $75,000 portion of the UIM award obtained by each of them, including Monroe. York does not challenge this finding. As we stated in *Henry*, 2005 VT 68, ¶ 14, the 1999 amendment to § 624(e) confirms the principle that an injured worker has a direct right to claim UIM benefits under an employer-purchased policy conferring first-party status to the worker with respect to such benefits. Thus, to the extent that a worker has incurred noneconomic damages uncompensated by workers' compensation payments, the worker is entitled to have those damages covered by any available first-party UIM benefits on a first-dollar basis. In such a scenario, there is no double recovery because workers' compensation benefits cover only economic damages. Therefore,

irrespective of the ratio of economic to noneconomic damages, Monroe would not be obtaining a double recovery by keeping the entire UIM award and applying it to his noneconomic damages. Because York had paid for Monroe's economic damages only, it could not seek reimbursement from a UIM award that was insufficient to cover Monroe's noneconomic injuries.

¶ 37. In short, the mandatory apportionment scheme imposed by the majority today is not compelled by our *Henry* decision, and, in any event, is inconsistent with the Legislature's intent regarding the 1999 amendment to § 624(e). In that amendment, the Legislature plainly evinced its intent to allow injured employees to retain UIM awards to the extent that retention of the award did not amount to a double recovery — in other words, to the extent that the UIM award could be applied to injuries for which the workers' compensation carrier had not compensated them. That is what occurred in this case because Monroe's extensive noneconomic injuries, which were not covered by the workers' compensation carrier, far exceeded the amount of his UIM award. I would hold that a "double recovery" as specified in § 624(e) for UIM and other first-party awards does not occur until an employee has been made whole out of such awards for noneconomic losses not covered by the workers' compensation insurer. This approach is not "unfair" to the workers' compensation carrier.

¶ 38. As noted, the Second Circuit held in *Carpenter* that § 624(e) exempts UIM proceeds from reimbursement to the workers' compensation carrier "except to the extent that those proceeds compensate an injured worker for more than the maximum recoverable loss that the worker has sustained." 411 F.3d at 337. I recognize that on remand from this Court's *Henry* decision the Second Circuit felt constrained — notwithstanding its reiteration that § 624(e) was intended to prevent only actual double recovery — to adopt a modified proration approach with respect to the distribution of UIM benefits. See *Travelers Ins. Co. v. Henry*, 470 F.3d 56, 64 (2d Cir. 2006) (requiring the district court to apportion the UIM award between noneconomic and economic damages and to reimburse the workers' compensation carrier for the economic portion of the award to the extent that, in combination with the workers' compensation benefits, it exceeds the employee's total economic damages). Nevertheless, I disagree with the approach set forth therein, to the extent that it would require

injured workers whose UIM awards do not fully compensate them for their noneconomic injuries to reimburse workers' compensation carriers from such awards for the payment of benefits covering solely economic losses. Our decision in *Henry* does not require such a result, even if the Second Circuit assumed that it did.

¶ 39. The majority concludes that "it is not fair or reasonable from the perspective of the workers' compensation insurer" to allow a profoundly injured employee to keep his entire UIM award, given that "someone other than the employer bears the 'legal liability' for the damages resulting from the employee's injury." *Ante*, ¶ 11. This reasoning is seriously flawed in the sense that both the Legislature and this Court have recognized that a UIM award is a first-party rather than a third-party recovery. Moreover, the conclusion is bereft of any notion of fairness or reasonableness from the perspective of the injured employee, who must now give up a portion of his UIM award to reimburse the workers' compensation carrier for its payment of the employee's economic losses, even though the award hardly begins to cover the employee's noneconomic injuries, including pain and suffering.

¶ 40. For the reasons set forth above, I would affirm the superior court's decision. I am authorized to state that Justice Johnson joins in this dissent.